**RECEIVED**

JUN 2 8 2022

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF MISSOURI**

ALISON (ALI) GRAEFF,

individually and as a

Candidate for Missouri State

Representative

        **Plaintiff,** *pro se,*

        v.

UNITED STATES ELECTION ASSISTANCE

COMMISSION,

**633 3rd Street NW, Suite 200**

**Washington, DC 20001**

**THOMAS HICKS, Commission Chairman**

in his individual capacity

and in his official

capacity as sole Federal

Election Authority; and

**CHRISTY McCORMICK, Vice Chairwoman**

all in her individual capacities and

in their capacities as members

of the Election Assistance Commission

**BENJAMIN W. HOVLAND, Commissioner**

all in his individual capacities and

in their capacities as members

of the Election Assistance Commission

**DONALD L. PALMER, Commissioner**

all in his individual capacities and

in their capacities as members

**CIVIL ACTION**

# 4:22-cv-00682 SEP

1

of the Election Assistance Commission

**MISSOURI SECRETARY OF STATE**

**JOHN J. ASHCROFT**

in his individual capacity

and in his official

capacity as Chief Elections Official

**Defendant(s),**

**COMPLAINT FOR SPECIFIC PERFORMANCE**

**AND INJUNCTIVE RELIEF**

**INTRODUCTION**

Plaintiff, Alison Graeff, individually and as a Candidate for Missouri State Representative for the August 2nd, 2022 Primaries, sui juris pro se litigant, without the assistance of an attorney, by exercising of the right to contract and refusal to CONSENT, am before this Court by or procedurally, hereby, file this Complaint against Defendant(s), the U.S. Election Assistance Commission (EAC), herein referred to the "EAC" or the "Commission", in his/her individual capacity and in his/her official capacity as sole U.S. Federal Election Authority, sued in their individual capacity and in their capacity as members of the EAC, and John J. Ashcroft, Missouri Secretary of State, in his/her individual capacity and in his/her official capacity as State Chief Elections Official, (collectively, "Defendants"), In support of the claims set forth herein.

**PARTIES**

**1. Plaintiff** Alison (Ali) Graeff is an adult individual who is a resident, a taxpayer, a registered voter and is officially listed on the ballot as a candidate for Missouri State Representative, Campaign for Ali Graeff, for the August 2nd, 2022, Primary in the State of Missouri, St. Charles County, Missouri.

**2. Defendants,** U.S. Election Assistance Commission (the "EAC" or the "Commission") is an appointed Commission; a legislative act directed by The *Help America Vote Act of 2002, (HAVA ACT)*, directly responsible for the duties as outlined in *Title II, Subtitle A, Pt. 1 Section 202 -Duties (1-6).*

**3. Defendant**, Thomas Hicks, was nominated by President Barack H. Obama and confirmed by unanimous consent of the United States Senate on December 16, 2014 to serve on the U.S. Election Assistance Commission (EAC). Mr. Hicks currently serves as Chairman of the EAC and Designated

Federal Officer (DFO) of the Technical Guidelines Development Committee (TGDC). Presently acting in the capacity of "Commission" Chairman as of February 2022, for a one-year term; additionally served as Chairman 2018-2019. In that capacity, responsible for the Voting System Testing Laboratories (VSTL) accreditation, testing, and certification process of U.S. voting machines. The EAC is the sole Federal authority for the accreditation and revocation of accreditation of VSTL's. He is sued in his official and individual capacities.

**4. Defendant**, Christy McCormick was nominated by President Barack H. Obama and confirmed by unanimous consent of the United States Senate on December 16, 2014 to serve on the U.S. Election Assistance Commission (EAC). Currently serving as "Commission" Vice Chairwoman and the Designated Federal Officer (DFO) for the EAC's Local Leadership Council. She served as "Commission" Chairwoman of the reconstituted Commission for the 2015-2016 term and also acted in the capacity of "Commission" Chairwoman in February 2019, for a one-year term; in that capacity, responsible for the Voting System Testing Laboratories (VSTL) accreditation, testing, and certification process of U.S. voting machines. The EAC is the sole Federal authority for the accreditation and revocation of accreditation of VSTL's. She is sued in her official and individual capacities.

**5. Defendant,** Benjamin Hovland was nominated by President Donald J. Trump and confirmed by unanimous consent of the United States Senate on January 2, 2019 to serve on the U.S. Election Assistance Commission (EAC). Mr. Hovland currently serves as the Designated Federal Officer (DFO) for the Board of Advisors. Additionally, served as "Commission" Chairman from February 2020-2021. In that capacity, responsible for the Voting System Testing Laboratories (VSTL) accreditation, testing, and certification process of U.S. voting machines. The EAC is the sole Federal authority for the accreditation and revocation of accreditation of VSTL's. He is sued in his official and individual capacities.

**6. Defendant,** Donald Palmer was nominated by President Donald J. Trump and Confirmed by unanimous consent of the United States Senate on January 2, 2019 to serve on the U.S. Election Assistance Commission (EAC). Mr. Palmer currently serves as the Designated Federal Officer (DFO) of the EAC's Standards Board. Additionally, served as "Commission" Chairman from February 2021-2022. In that capacity, responsible for the Voting System Testing Laboratories (VSTL) accreditation, testing, and certification process of U.S. voting machines. The EAC is the sole Federal authority for the accreditation and revocation of accreditation of VSTL's. He is sued in his official and individual capacities. At all relevant times hereto, the "Commissioners" of the EAC and individual Defendants were acting under color of law. *Title 18, U.S.C., § 242,* Deprivation of Rights Under Color of Law makes it a crime for a person acting under color of law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States.

3

**7. Defendant,** John J. Ashcroft was elected in November 2016, and again in 2020, as Missouri's Secretary of State. He is the chief election official for Missouri. He is sued in his official and individual capacities.

## JURISDICTION AND VENUE

Plaintiff incorporates the foregoing paragraphs as if set forth in full herein. This Court has subject matter jurisdiction over Plaintiffs' claims under the ***Help America Vote Act 2002, (HAVA ACT), Title 18***

***U.S.C. § 241 and***

***Title 18 U.S.C. § 242, and***

***Title 28 U.S.C. § 1331 and § 1343(a)(3) and § 1391(a)(1), (b)(2), (e)(1), and***

***Title 42 U.S.C. § 1983, and***

***Title 52 U.S.C. § 10307(d), § 20511(2)(B).*** and ***U.S. Constitution 14th Amendment and***

***Title 18 U.S.C. § 241 –***

> **Conspiracy against rights-** "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same."

***Title 18 U.S.C. § 242 –***

> **Deprivation of Rights Under Color of Law-** "any scheme that involves the necessary participation of public officials, usually election officers or notaries, acting "under color of law," to willfully deprive a person of a right or privilege protected which is actionable as a derogation of the "one person, one vote" principle of the Constitution or laws of the United States", i.e., "public schemes;"

***Title 28 U.S.C. § 1343, (a)(3),***

> (a) "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the

4

Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

***Title 28 U.S.C. § 1391(a) (1-2), (b)(2), (e)(1) -***

**(a)Applicability of Section.** —"Except as otherwise provided by law— **(1)** this section shall govern the venue of all civil actions brought in district courts of the United States; and **(2)** the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature."

**(b) Venue in General.** —"A civil action may be brought in— **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

**(e) Actions Where Defendant Is Officer or Employee of the United States. — (1) In general.** — "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of

legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which **(A)** a defendant in the action resides, **(B)** a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or **(C)** the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party."

***Title 42 U.S.C. § 1983***

- ***Civil Action for Deprivation of Rights*–** "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

5

There exists an actual and justiciable controversy between Plaintiffs and Defendant requiring resolution by this Court. Plaintiffs have no adequate remedy at law. Venue is proper before the United States District Court for the Eastern District of Missouri under *28 U.S.C. § 1391* because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiffs' claims occurred within the jurisdiction of the Eastern District of Missouri.

## STATEMENT OF FACTS

Plaintiff incorporates the foregoing paragraphs as if set forth in full herein.

Voting System Laboratory Accreditation(s) provided from the EAC for the 2020 General Election and subsequent elections thereof, were not in compliance with the written policy of the *EAC Voting System Test Laboratory Program Manual, version 2.0, (OMB-3265-0018)[1], Section 3.4, 3.6 and 3.8* which violate the federal standards for laboratory testing accreditation set forth in the *HELP AMERICA VOTE ACT 2002, (HAVA ACT), Subtitle B § 231 (a) (1) (2) (b) (1).*

**HELP AMERICA VOTE ACT OF 2002 (HAVA 2002)[2]**

**Title II – COMMISSION**

**Subtitle A – Establishment and General Organization**

**Part 1 – Election Assistance Commission** (EAC),

**§ 202. Duties.**

"The Commission shall serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections by"

**(1)** "carrying out the duties described in part 3 (relating to the adoption of voluntary voting system guidelines), including the maintenance of a clearinghouse of information on the experiences of State and local governments in implementing the guidelines and in operating voting systems in general;"

**(2)** "carrying out the duties described in subtitle B (relating to the testing, certification, decertification, and recertification of voting system hardware and software);"

---

[1] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf
[2] https://www.congress.gov/107/plaws/publ252/PLAW-107publ2.pdf

6

**(3)** "carrying out the duties described in subtitle C (relating to conducting studies and carrying out other activities to promote the effective administration of Federal elections);"

**(4)** "carrying out the duties described in subtitle D (relating to election assistance), and providing information and training on the management of the payments and grants provided under such subtitle;"

**(5)** "carrying out the duties described in subtitle B of title III (relating to the adoption of voluntary guidance); and"

**(6)** "developing and carrying out the Help America Vote College Program under title V.""

**§ 205. Powers.**

**(a)** HEARINGS AND SESSIONS. — "The Commission may hold such hearings for the purpose of carrying out this Act, sit and act at such times and places, take such testimony, and receive such evidence as the Commission considers advisable to carry out this Act. The Commission may administer oaths and affirmations to witnesses appearing before the Commission."

**(b)** INFORMATION FROM FEDERAL AGENCIES. — "The Commission may secure directly from any Federal department or agency such information as the Commission considers necessary to carry out this Act. Upon request of the Commission, the head of such department or agency hall furnish such information to the Commission."

**(c)** POSTAL SERVICES. — "The Commission may use the United States mails in the same manner and under the same conditions as other departments and agencies of the Federal Government."

**d)** ADMINISTRATIVE SUPPORT SERVICES. — "Upon the request of the Commission, the Administrator of General Services shall provide to the Commission, on a reimbursable basis, the administrative support services that are necessary to enable the Commission to carry out its duties under this Act."

**(e)** CONTRACTS. — "The Commission may contract with and compensate persons and Federal agencies for supplies and services without regard to section 3709 of the Revised Statutes of the United States (41 U.S.C. 5).""

**Title 52—VOTING AND ELECTIONS Subtitle II—Voting Assistance and Election Administration - 52 U.S.C. Ch. 209: ELECTION ADMINISTRATION IMPROVEMENT[3] SUBCHAPTER II— COMMISSION Part A—Establishment and General Organization Subpart 1—election assistance commission**

### § 20921. Establishment

"There is hereby established as an independent entity the Election Assistance Commission (hereafter in this subchapter referred to as the "Commission"), consisting of the members appointed under this subpart. Additionally, there is established the Election Assistance Commission Standards Board (including the Executive Board of such Board) and the Election Assistance Commission Board of Advisors under subpart 2 of this part (hereafter in this subpart referred to as the "Standards Board" and the "Board of Advisors", respectively) and the Technical Guidelines Development Committee under subpart 3 of this part."

### § 20922. Duties

"The Commission shall serve as a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections by" —

(1) "carrying out the duties described in subpart 3 of this part (relating to the adoption of voluntary voting system guidelines), including the maintenance of a clearinghouse of information on the experiences of State and local governments in implementing the guidelines and in operating voting systems in general;"

(2) "carrying out the duties described in part B of this subchapter (relating to the testing, certification, decertification, and recertification of voting system hardware and software);"

(3) "carrying out the duties described in part C of this subchapter (relating to conducting studies and carrying out other activities to promote the effective administration of Federal elections);"

(4) "carrying out the duties described in part D of this subchapter (relating to election assistance), and providing information and training on the management of the payments and grants provided under such part;"

---

[3] https://uscode.house.gov/view.xhtml?path=/prelim@title52/subtitle2/chapter209&edition=prelim

8

(5) "carrying out the duties described in part B of subchapter III (relating to the adoption of voluntary guidance); and".

(6) "developing and carrying out the Help America Vote College Program under subchapter V.

(Pub. L. 107–252, title II, §202, Oct. 29, 2002, 116 Stat. 1673.)

**52 U.S.C. Ch. 209: ELECTION ADMINISTRATION IMPROVEMENT[4] SUBCHAPTER II - Subpart 3—technical guidelines development committee - Part B—Testing, Certification, Decertification, and Recertification of Voting System Hardware and Software**

**§ 20971. Certification and testing of voting systems**

**(a) Certification and testing**

**(1) In general**

"The Commission shall provide for the testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories."

**(2) Optional use by States**

"At the option of a State, the State may provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the Commission under this section."

**(b) Laboratory accreditation**

**(1) Recommendations by National Institute of Standards and Technology**

"Not later than 6 months after the Commission first adopts voluntary voting system guidelines under subpart 3 of part A of this subchapter, the Director of the National Institute of Standards and Technology shall conduct an evaluation of independent, non-Federal laboratories and shall submit to the Commission a list of those laboratories the Director proposes to be accredited to carry out the testing, certification, decertification, and recertification provided for under this section."

**(2) Approval by Commission**

---

[4] https://uscode.house.gov/view.xhtml?path=/prelim@title52/subtitle2/chapter209&edition=prelim

9

**(A) In general**

"The Commission shall vote on the accreditation of any laboratory under this section, taking into consideration the list submitted under paragraph (1), and no laboratory may be accredited for purposes of this section unless its accreditation is approved by a vote of the Commission."

**(B) Accreditation of laboratories not on Director list**

"The Commission shall publish an explanation for the accreditation of any laboratory not included on the list submitted by the Director of the National Institute of Standards and Technology under paragraph (1)."

**(c) Continuing review by National Institute of Standards and Technology**

**(1) In general**

"In cooperation with the Commission and in consultation with the Standards Board and the Board of Advisors, the Director of the National Institute of Standards and Technology shall monitor and review, on an ongoing basis, the performance of the laboratories accredited by the Commission under this section, and shall make such recommendations to the Commission as it considers appropriate with respect to the continuing accreditation of such laboratories, including recommendations to revoke the accreditation of any such laboratory."

**(d) Transition**

"Until such time as the Commission provides for the testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories under this section, the accreditation of laboratories and the procedure for the testing, certification, decertification, and recertification of voting system hardware and software used as of October 29, 2002, shall remain in effect."

(Pub. L. 107–252, title II, §231, Oct. 29, 2002, 116 Stat. 1684.)

**INTRODUCTION**

**HAVA**

**1.1 Authority.** The law, policies and guidelines governing our elections of the HELP AMERICA VOTE ACT 2002 and the U.S. Election Assistance Commission were authorized by Congress and mandated to safeguard and protect the People's Voice to elect servants for the purpose of conducting the People's business. "In late 2002, Congress passed the Help America Vote Act of 2002 (HAVA) HAVA created the U.S. Election Assistance Commission (EAC) and assigned to the EAC the responsibility for both setting voting system standards and providing for the voluntary testing and certification of voting systems. This mandate represented the first time the Federal government provided for the voluntary testing, certification, and decertification of voting systems nationwide. In response to this HAVA requirement, the EAC has developed the voting system standards in the form of the Voluntary Voting System Guidelines (VVSG), a voting system certification program in the form of the Voting System Testing and Certification Program Manual and this document, the Voting System Test Laboratory Manual (OMB 3265-0018)[5]."

**NIST**

Subtitle B, § 231 of the Help America Vote Act requires that "the EAC provide for the testing, certification, decertification and recertification by a federally accredited laboratory for the system's used in federal elections. The EAC has made National Institute of Standards and Technology's (NIST) National Voluntary Laboratory Accreditation Program (NVLAP) accreditation a requirement as part of its Voting System Testing Laboratory (VSTL) accreditation program. NVLAP accreditation is the primary means by which the EAC ensures that each VSTL meets and continues to meet the technical requirements of the EAC program."

**1.3 Role of the National Institute of Standards and Technology.** "§ 231(b)(1) of HAVA requires that the National Institute of Standards and Technology "conduct an evaluation of independent, non-federal laboratories and shall submit to the Commission a list of those laboratories…to be accredited…." Additionally, HAVA § 231(c) requires NIST to monitor and review the performance of EAC accredited laboratories. NIST has chosen its National Voluntary Laboratory Accreditation Program (NVLAP) to carry out these duties. NVLAP conducts a review of applicant laboratories in order to provide a measure of confidence that such laboratories are capable of performing testing of voting systems to Federal standards. Additionally, the NVLAP program monitors laboratories by requiring regular assessments. Laboratories are reviewed one year after their initial accreditation and biennially thereafter. The EAC has made NVLAP accreditation a requirement of its Laboratory Accreditation Program. However, a NVLAP

---

[5] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf

11

accreditation is not an EAC accreditation. EAC is the sole Federal authority for the accreditation and revocation of accreditation of Voting System Test Laboratories (VSTL)[6]."

**NVLAP**

The National Voluntary Laboratory Accreditation Program (NVLAP) is a U.S. Government entity administered by the National Institute of Standards and Technology (NIST), an agency of the U.S. Department of Commerce. NVLAP requirements are mandatory and must be fulfilled to achieve and maintain accreditation. NVLAP requirements are found in NIST Handbook 150[7], NIST Handbook 150-2020 Ed., series, NVLAP Policy Guides, and NVLAP Laboratory Bulletins.

**EAC**

Being the sole Federal Election Authority, the U.S. Election Assistance Commission (EAC) oversees federal voting system certification requirements. The EAC also oversees the thorough, independent testing process which determines whether a voting system meets requirements, including standards designed to ensure the systems accuracy. The Election Assistance Commission is "composed of four citizens who are appointed Representatives of the U.S. Federal Government. The "Commission" created from The Help America Vote Act of 2002 (HAVA) specifies four commissioners, nominated by the President of the United States on recommendations from the majority and minority leadership in the U.S. House of Representatives and the U.S. Senate. No more than two commissioners may belong to the same political party. Once confirmed by the full Senate, commissioners may serve two consecutive terms. HAVA states that a member of the commission shall continue to serve past their expired term until a successor takes office.

With HAVA's enactment, the responsibility for developing voting system standards was transferred from the FEC to the EAC and their new iterations are now the EAC Voluntary Voting System Guidelines. Voluntary Voting System Guidelines (VVSG)[8] are a set of specifications and requirements that voting systems, including voting devices and software, must meet in order to receive a certification from the EAC. Although participation in the program is voluntary, adherence to the program's procedural requirements is mandatory for participants. Once a state opts into HAVA, its codified into law.

---

[6] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf
[7] National Voluntary Laboratory Accreditation Program (NVLAP) Procedures and General Requirements (nist.gov)
[8] https://www.eac.gov/sites/default/files/eac_assets/1/28/VVSG1.0Vol.2.PDF

12

Voting System Test Laboratory Accreditation Program Manual contains the regulations for the Voluntary Voting System Guidelines. The procedural requirements of this Manual will supersede any prior laboratory accreditation requirements issued by the EAC. This manual shall be read in conjunction with the EAC's Testing and Certification Program Manual (TCPM) (OMB 3265-0019).

**1.4. Scope**. "This Manual[9] provides the procedural requirements of the EAC voting system Laboratory Accreditation Program. Although participation in the program is voluntary, adherence to the program's procedural requirements is mandatory for participants. The procedural requirements of this Manual supersede any prior laboratory accreditation requirements issued by the EAC. This manual shall be read in conjunction with the EAC Voting System Testing and Certification Manual."

Voting System Test Laboratory Accreditation Program Manual page 4, section 1.6.2.3 "The EAC accredits VSTLs, after the National Institute of Standards and Technology (NIST) National Voluntary Lab Accreditation Program (NVLAP) has reviewed their technical competence and lab practices to ensure the test authorities are fully qualified." The Voting System Test Laboratory Accreditation Manual agrees with the NIST NVLAP Handbook 150 in regard to the expiration and renewal requirements for continued accreditation, and every other requirement of the Handbook 150. See section 3.8 of the Voting System Test Laboratory Accreditation Manual:

**EXPIRATION**

**3.8. Expiration and Renewal of Accreditation**. "A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting an application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5."

---

[9] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf

With the role of the EAC and their reliance on the NIST's NVLAP accreditation program, the Handbook 150, the Voting System Test Laboratory Accreditation Manual, and the expiration and renewal requirements established, implications at the state level are addressed.

Missouri elected to participate in the Voluntary Voting System Guidelines and has an obligation to follow the guidelines. Not only that, but Missouri state law requires our election systems to be certified by a federally accredited laboratory and requires the Secretary of State to only certify machines which have been approved by the appropriate voting system test laboratory approved by the United States Election Assistance Commission. Remember, the EAC serves as the national clearinghouse with respect to the administration of elections.

**MISSOURI STATE LAW**

**Missouri Constitution Article 1 § 2 and § 3**

**Purpose of government; Powers of the people**

"That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design."

"That the people of this state have the inherent, sole and exclusive right to regulate the internal government and police thereof, and to alter and abolish their constitution and form of government whenever they may deem it necessary to their safety and happiness, provided such change be not repugnant to the Constitution of the United States."

"The People of the state of Missouri have the inherent right of regulating their internal government. Government is instituted for protection, security, and benefit of the People and at all times they have the right to alter or reform the same whenever the public good may require it. It is the People who decide what direction the government should proceed."

**Missouri Constitution Article 1 § 1**
**Source of political power**
"That all political power is vested in and derived from the people; that all government of right originates from the people, is founded upon their will only, and is instituted solely for the good of the whole."

14

Thus, the natural rights of this Sui Juris human is the Supreme Law of the land. Affiant's individual rights are also secured within the Missouri and United States Constitutions.

Affiant comes as one of the People from which your power is derived. Your Oath of Office affirms your main purpose is to protect and maintain my natural and individual Rights.

**Missouri Constitution Article 1 § 4**

**Independence of Missouri**

"That Missouri is a free and independent state, subject only to the Constitution of the United States ..." You, as state servants, are subject to having your actions restricted if your actions are not consistent with protecting the People's freedom. Any failure on your part to protect these rights is a breach of contract and a breach of your trust indenture, granted by the People, and will be considered an act of maladministration and misconduct and an attack on the People you have sworn to serve."

**Missouri Constitution Article 1 § 25**

**Elections and right of suffrage**

"That all elections shall be free and open' and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage." "It is the responsibility of our elected servants to ensure our elections are fair, safe, and conducted legally without fraud, misconduct or misrepresentation."

**C.S.R. Title 15—ELECTED OFFICIALS Division 30—Secretary of State Chapter**

15 CSR 30-1.010 General Organization –

"1. The secretary of state is the chief elections official"

**RSMo Title IX, § 115.225 (1), (2) (10)**

**Automated equipment to be approved by Secretary of State - Standards to be met – Rules, promulgation, procedure**

1 "Before use by election authorities in this state, the secretary of state shall approve the marking devices and the automatic tabulating equipment used in electronic voting systems and may promulgate rules and regulations to implement the intent of sections RSMo §§115.225 to 1150235."

15

**2** "No electronic voting system shall be approved unless it:

**(10)** Has been tested and is certified by an independent authority that meets the voting system standards developed by the Federal Election Commission or its successor agency."                                     (Exhibit **A**)

## COMPLAINT

Neither the Secretary of State nor the VSTL's used in the State of Missouri to test voting systems used in the 2020 elections comply with these laws.

The laboratories used to test voting systems in the State of Missouri include NTS Huntsville Laboratory, Pro &V, and SLI Compliance.

NTS Huntsville Laboratory was the laboratory that tested several voting systems widely used in Missouri, and across the country for that matter. The other laboratories used to test our machines utilized in the 2020 General and subsequent election(s) were Pro V&V, and SLI Compliance.

NTS Huntsville Laboratory (hereafter referred to as NTS) tested voting systems widely used in Missouri and nationwide. In 2014, NTS acquired Wyle Laboratories (footnote letter?), a previously accredited VSTL. However, Wyle's Certificate of accreditation, valid from 05/04/2010 through 04/27/2012, had already expired. NTS never received legal EAC accreditation, nor is a Certificate of Accreditation available on the EAC website as dictated by HAVA10. Seventy-one (71) counties in Missouri reported using an outdated version of Unisyn OpenElect version 1.3 on voting systems. The EAC granted this particular version of OpenElect a Certificate of Conformity in January 2015 without ever having an accredited laboratory test. This is in direct violation of the Election Assistance Commission's own policies and the HAVA ACT 2002. In response to a request for lab accreditation of voting machines in the affected counties, the Secretary of State's office answered with the Wyle Laboratories expired 2010-2012 Certificate of Accreditation.                                     (Exhibit **B, C, D, E**)

NTS Huntsville Laboratory was out of Compliance with federal law per the EAC VSTL Manual:

- NIST Recommendation Letter (3.6.2.1)
- Certificate of Conditions and Practices (3.6.2.3) and
- Commissioners Decisions on Accreditations (3.6.2.4)

. Ten (10) Counties in Missouri reported using SLI Compliance Division of Gaming Laboratories to test the software election machines.[10]  Per the EAC's own "Voting System Testing and Certification Program

---

[10] Accredited Laboratories | U.S. Election Assistance Commission (eac.gov)

Manual, Version 2.0" any modifications made to Missouri voting machine software requires testing by accredited laboratories.

**3.1. Overview.**

"An EAC certification signifies that a voting system has been successfully tested against an identified voting system standard adopted by the EAC. Only the EAC can issue a federal certification. Ultimately, systems must be submitted for testing and certification under this program to receive this certification. Systems will usually be submitted when (1) they are new to the marketplace, (2) they have never before received an EAC certification, (3) they are modified, or (4) the Manufacturer wishes to test a previously certified system to a different (newer) standard. This chapter discusses the submission of de minimis change orders, which may not require additional testing and certification. Additionally, this chapter outlines provisional, pre-election emergency modifications, which provide for pre-election, emergency waivers."

SLI Compliance was a previously accredited VSTL. However, the certificate of accreditation expired on February 28, 2009. It is unclear how Hart InterCivic could implement a major update to their Verity software (version 2.3) in 2019 without having been tested by an accredited lab. (Exhibit **F1, F2**)

Lastly, Pro V&V was a previously accredited VSTL. However, the certificate of accreditation expired on February 24, 2017. It is unclear how affected voting machines received on October 17, 2017, a Certificate of Conformance for the OpenElect software update from 1.3 to 2.0, nearly eight months after Pro V&V's certificate of accreditation had expired. It was not until January 2021 that Pro V&V renewed its accreditation. The new certificate does not indicate an expiration date and instead, states that "accreditation remains effective unless revoked upon a vote of the commission." However, the NIST's NVLAP website clearly references an expiration date for accreditation. It is not possible to have an accreditation which is indefinite when one of the requirements for accreditation has an expiration and renewal requirement.

The U.S. Election Assistance Commission, in a Notice of Clarification, NOC 21-01 VSTL Accreditation Status issued July 23, 2021, states, "The EAC is the sole Federal authority for the accreditation and revocation of accreditation of (Voting System Test Laboratories) VSTLs."   (Exhibit **G, H**)

The EAC issued a statement asserting Covid-19 as the reason Pro V&V failed to maintain accreditation, despite the fact that their accreditation expired in 2017. This is illogical and contrary to an EAC statement

17

six months earlier indicating that accreditation should not exceed two years. The EAC is inconsistent with their policies and appear to selectively reinforce them.

The EAC also issued a statement in which they asserted that the lapse in proper accreditation was a clerical error and a laboratory's accreditation is only revokable upon request. This appears to be in reference to section 5.2 of the Accreditation Manual, however, it fails to address the contradictory requirement of renewal and expiration dates referenced above.

This statement is correct only in citing a test laboratory cannot be revoked unless the Commission votes to revoke the laboratory accreditation as cited in HAVA 2002; (Exhibit I)

**HAVA Title II, Subtitle B, § 231(b) (1) (c) (2), Continuing Review by National Institute of Standards and Technology**; however, the EAC is obscuring the fact the laboratories must be re-accredited every TWO (2) years and an authorized signature must be that of the EAC Chair of Commissioners as specifically written in the EAC VSTL Program Manual version 2.0, (OMB3265-0018), Accreditation Process: Section 3.6.1. and 3.8.

The EAC statement is not incorrect, it is merely misleading and irrelevant to the compliance, renewal and expiration of the accreditations. The statement may have been a general response intended to address the question of whether or not an accreditation was revoked. The manual includes a section addressing suspension, but their statement is only accurate in reference to revocation. If revocation were the only manner in which accreditation would cease, the rest of the regulations would be invalidated.

The EAC appears to be suggesting that Pro V&V has been accredited the entire time, without interruption. That cannot be the case according to the NVLAP accreditation certificate, which was issued in 2021 and expires in 2022. Notice the one-year expiration date. For a newly accredited lab, the lab is required to renew after 1 year, then biannually thereafter.                    (Exhibit J)

Within the same (exhibit "I") document, paragraph (3) the EAC states with its own admission:
>    *"Due to administrative error during 2017-2019, the EAC did not issue an updated*
>    *certificate to Pro V&V causing confusion with some people concerning their good*
>    *standing status." "Even though the EAC failed to reissue the certificate, Pro V&V's*
>    *audit was completed in 2018 and again in early 2021 as the scheduled audit of Pro*
>    *V&V in 2020 was postponed due to COVID-19 travel restrictions."*
>    *The EAC admits it did not follow, and ignored, their own policies and procedures*
>    *written in the EAC VSTL Program Manual to re-issue Certificates of Accreditation*

18

*for Pro V&V Laboratory and SLI Compliance Division of Gaming Laboratories International, LLC for the 2020 General Election.*

*It acknowledges Its failure to re-certify PRO V&V Labs for the 2020 General Election in paragraph (3) stating, "the scheduled audit of Pro V&V was postponed due to COVID-19 travel restrictions."*

The Centers for Disease Control (CDC) reported and confirmed COVID-19 in the United States on January 20, 2020, which should not have hampered, interfered, or delayed the re-certification accreditation of the Laboratories for the 2020 General election. (Exhibit **K**)

In paragraph (4) of the (exhibit "I") document the EAC reports, "the Testing & Certification program has been fully staffed since May 2019, and we are confident that the integrity of the labs and our voting system certification programs has remained strong throughout." "Confidence" does not equate to a valid Certification of Accreditation for election safety and integrity.

A letter dated January 27, 2021, from Jerome Lovato, Voting System Testing and Certification Director, in reference to Pro V&V EAC VSTL Accreditation acknowledges Section 3.8 of the VSTL Program Manual version 2.0 policy stating: "Pro V&V has completed all requirements to remain in good standing with the EAC's Testing and Certification program per section 3.8 of the Voting System Test Laboratory Manual, version 2.0:" "Expiration and Renewal of Accreditation. A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated. (Exhibit **L**)

If Pro V&V were accredited the entire time, the accreditation certificates would have a 2-year expiration and renewal date from the original accreditation of February 2015 with renewal dates of February 2017 and 2019 yet no accreditation certificates exist for 2017 and 2019. Therefore, this lab was not accredited during the time it falsely claims the machines were accredited and in use in the state of Missouri and nationwide. The accreditation certificates are not available on the NIST or the EAC's websites, where the 2015 and 2021 records are found. (Exhibit **M**)

**COMMISSION CERTIFICATION SIGNATURE VIOLATIONS**

Not only is the date on these accreditation certifications important, but the signature on the lab Certification of Accreditation is very crucial. As a Licensed Realtor it is standard practice when at a

19

closing table to ensure the buyers new home title is correctly signed by the signing authority. No other signature would be legal. Its Contractual law.

Per the (VSTL) Voting System Test Laboratory Program Manual ver. 2.0 effective May 31, 2015, page 38, Sec 3.6.1. Certificate of Accreditation: "A Certificate of Accreditation shall be issued to each laboratory by vote of the Commissioners. The certificate shall be signed by the CHAIR of the Commission and state:"

**3.6.1.3. The effective date of the certification, which shall not exceed a period of two (2) years**

Both Donald Palmer AND Benjamin Hovland were appointed by President Trump and confirmed in the senate on Feb. 4, 2019, as EAC Commissioners but not Chairman. Neither of these two could be valid signatures on the Laboratory Certificates of Accreditation since none were issued in 2020.

(Exhibit **N**)

- Donald Palmer was elected Commission Chairman February 24, 2021 (Exhibit **O**)
- Benjamin Hovland was appointed Commission Chairman February 2020 (Exhibit **P**)

Commission Chair McCormick's signature should be on ALL EAC Laboratory Certificates of Accreditation for the 2020 General Election.

Christy McCormick was elected as Commission Chairwoman on February 24, 2019 (Exhibit **Q**)

Chairman Thomas Hick's signature would have only been good thru February 2020 but depending when it was signed the Certificates of Accreditation signed by Hicks could be valid.

Thomas Hicks was elected as Commission Chairman on February 24, 2018 (Exhibit **R**)

Just like in a real estate transaction, until you have the fully executed contract, you do not have anything binding on which to build a transaction or abiding terms. The Certificate itself is the proof of the contract. To have a valid contract, you must have an Offer, Consideration, and Acceptance.

The "Offer" is the Letter of Agreement, submitted by the applicant laboratory. The VSTL authorized signature on this agreement serves as the VSTL contract offer to do business with the EAC and to ensure oversight when dealing with official infrastructure.

20



**3.4.2. Letter of Agreement**. "The applicant laboratory must submit a signed letter of agreement as a part of its application. This letter shall be signed by an official vested with the legal authority to speak for, contract on behalf of or otherwise **bind** the applicant laboratory (see Section 2.21). The purpose of this letter is to document that the applicant laboratory is aware of and agrees to abide by the requirements of the EAC Voting System Testing Laboratory Accreditation Program. ***No applicant laboratory will be considered for accreditation unless it has properly submitted a letter of agreement.*** The letter shall unequivocally state the following:"

> *"The undersigned representative of _____ (hereinafter "Laboratory"), being lawfully authorized to bind Laboratory and having read the EAC Voting System Test Laboratory Program Manual, accepts and agrees on behalf of Laboratory to follow the program requirements as laid out in Chapter 2 of the Manual. Laboratory shall meet all program requirements as they relate to NVLAP accreditation; conflict of interest and prohibited practices; personnel policies; notification of changes; resources; site visits, notice of lawsuits; testing, technical practices and reporting; laboratory independence; **authority to do business in the United States**; VSTL communications; **financial stability**; and recordkeeping. Laboratory further recognizes that meeting these program requirements is a continuing responsibility. Failure to meet each of the requirements may result in the denial of an application for accreditation, a suspension of accreditation or a revocation of accreditation"*

Consideration of offer is covered here.

**3.5. EAC Review of Application Package**.

> "The EAC will perform a review of each Applicant Laboratory's application package to ensure that it is complete, and the laboratory meets Voting System Test Laboratory Program Manual, Version 2.0 36 OMB Control Number: 3265-0018 the program requirements. Each package will be reviewed to identify any apparent nonconformities or deficiencies. If necessary, the Program Director will notify Applicant Laboratories of any such nonconformities or deficiencies and provide them an opportunity to cure problems prior to forwarding the package to the Commissioners. The Program Director will issue a recommendation to the Commissioners when

21

forwarding any application package. Consistent with HAVA, a laboratory will receive an accreditation only upon a vote of the Commissioners."

The ratification of the entire transaction, as laid out in the manual, is the signature of the Chair of Commission. That actual laboratory Accreditation Certificate is the ratification of the relationship. It must be signed by the Chair of the Commission.

These portions of the EAC manual describe pertinent steps that are critical to the very charter that the EAC was created for. A contractual relationship necessitating a binding signature on the letter of agreement. The EAC Manual dictates an agreement is void if not ratified and re-applied for every 2 years. Any lapse of signature or appropriate paperwork would, of necessity, make the contract null and void because it includes in depth consideration, counter commentary and eventually ratification by the EAC in the form of issuance of a signed and dated Certificate of Accreditation.

This equals a contract to do business together. Terms are clearly defined validated by both sides.

**WHO SIGNED THE VSTL CERTIFICATIONS?**

| VSTL Name | EAC Accreditation on file? | Date of Expiration | Signed by EAC Chairman? | Who signed? |
|---|---|---|---|---|
| NTS Huntsville | NO | X | X | X |
| Pro V&V | YES | 2/24/2017 | NO | Acting Exec. Director Alice Miller |
| SLI Compliance | YES | 1/10/2020 | NO | Exec Director Brian Newby |

Contract for Pro V&V and SLI Compliance were void due to:

- Lack of submission of the Letter of Agreement
- Lack of Binding signature on the Certification.

NTS Huntsville is out of compliance with documentation requirement per the EAC VSTL manual:

- NIST Recommendation letter (3.6.2.4)
- Certifications and Practices (3.6.2.3)
- Commissions Decisions (3.6.2.4)

SLI Compliance lacks 4 out of 5 required documents per EAC VSTL:

- NIST Recommendation letter (3.6.2.4)
- Letter of Agreement (3.6.2.2)
- Certifications and Practices (3.6.2.3)
- Commissions Decisions (3.6.2.4)

Pro V&V lacks documentation on

- Commission's decision on Accreditation (3.6.2.4)
- No new certification in 2017
- No documentation on website from 2015 to 2021

**4.1. Purpose.**

"The purpose of the Compliance Management Program is to improve EAC's Laboratory Accreditation Program and testing; increase coordination, communication and understanding between the EAC and its VSTLs; and *increase public confidence in elections* by facilitating VSTL accountability. The program accomplishes this by increasing personal interaction between EAC staff and VSTL personnel, collecting information and performing reviews to ensure continued compliance with program requirements, and requiring that VSTLs promptly remedy any identified areas of noncompliance."

**EAC & COVID**

**Disaster Preparedness and Recovery**

Thankfully, administrative tasks were generally and appropriately carried out during Covid-19 as the EAC was able to mitigate the foreseeable risks of the pandemic. PPE plans were promptly put in place for CARES ACT relief funding and their website was helpful. Communications with states continued.

(Exhibit **S1, S2**)

FEMA's website states on March 13, 2020 President Trump declared a nationwide emergency pursuant to Title V, § 501(b) of the Stafford Act, and Emergency Assistance Act (Stafford Act; 42 U.S.C. §5191(b))

(Exhibit **T**)

The good news is the EAC has plenty of documentation of habit in paperwork and meetings regarding how well prepared this Commission can be to deal with any kind of emergencies and disasters. You can see in for 2016, they had an Initiative to deal with H1N1. In 2019 they had a very comprehensive meeting that talked a great deal about continuing plans for emergencies and in 2020, they put into place massive continuation plans regarding Covid[11]

Their disaster preparedness was mentioned and executed for years by the EAC. Natural disasters, Hurricanes, pandemics, they assured the public they would be prepared to assist the states.

---

[11] Disaster Preparedness and Recovery | U.S. Election Assistance Commission (eac.gov)

23

When Covid hit, it was handled quite well by the EAC. Luckily, they were able to work from home like many other administrative positions across the nation[12]. The increase in digital methods to work remotely, both before Covid and after, has allowed for very little disruption in administrative tasks. EAC has rules in place to receive documents digitally and to review and sign documents through e-sign. The boom in housing market sales during 2020 proves it can be an easy, smooth process, even in a national emergency. The Zoom® revolution also has made voting and decision making over video chat, a welcome alternative to coming into an office.

HAVA states "the EAC is an independent entity."

**TITLE II—COMMISSION Subtitle A—Establishment and General Organization PART 1— ELECTION ASSISTANCE COMMISSION**

**EC. 201. ESTABLISHMENT**. "There is hereby established as **an independent entity** the Election Assistance Commission (hereafter in this title referred to as the ''Commission''), consisting of the members appointed under this part. Additionally, there is established the Election Assistance Commission Standards Board (including the Executive Board of such Board) and the Election Assistance Commission Board of Advisors under part 2 (hereafter in this part referred to as the ''Standards Board'' and the ''Board of Advisors'', respectively) and the Technical Guidelines Development Committee under part 3.

*"Independent entity* means an entity having a public purpose relating to the state or is given by the state the right to exist and conduct its affairs"[13]

As an independent entity with a public purpose that has only increased in the past election year, EAC officials were excellent at processing grants, helping states with PPE, and taking close care regarding Covid-19. The EAC performed the impossible, when it didn't seem practical to do so during a national emergency. Yet, it appears that the most important task before this Commission has been ignored for several years. Commensurate effort was not put forth regarding the laboratory accreditations and due diligence as will be shown throughout this Complaint."

**Relevant Policies of the Election Assistance Commission**

---

[12] Coronavirus (COVID-19) Resources | U.S. Election Assistance Commission (eac.gov)
[13] Independent entity Definition | Law Insider

**3.2.2. Emergency** – "EAC Accreditation without NIST Recommendation. HAVA authorizes the EAC to consider and accredit laboratories without a NIST recommendation (42 U.S.C. §15371(b)(2)(B)). The EAC will accredit laboratories without a NIST recommendation only as an emergency action."

> **3.2.2.1. Emergency Action**—"Defined. The EAC will take emergency action only in instances where (1) there is a significant national need for accredited laboratory testing capacity that cannot be met by existing VSTL's, (2) the shortage of laboratory testing capacity may cause a disruption in the orderly administration of Federal elections, and (3) NIST is not capable of timely providing new laboratories to meet needs. Consistent with HAVA, the EAC will publish its basis for emergency action following the above standards."

> **3.2.2.2. Emergency Action**—"Process. Laboratories shall be accredited by the EAC in an emergency action only after they have been properly assessed according to international standards and applicable NIST Guidance. These standards include International Standard ISO/IEC 17025, General Requirements for the Competence of Testing and Calibration Laboratories; NIST Handbook 150, Procedures and General Requirement; NIST Handbook 150-22, Voting System Testing; and/or any documents supplementing, updating or replacing these standards or handbooks."

> **3.2.2.3. Emergency Action**—"Provisional. Any accreditation provided by the EAC through its emergency action authority will be provisional in nature and limited in scope. All emergency accreditations must expire on a date certain."

**EAC Rules as to Standards and Compliance for VSTLs**

The EAC issues formal Certificates of Accreditation that are to be published on the EAC website.

**3.6.2. "Post Information on Web Site. The Program Director shall make information pertaining to each accredited laboratory available to the public on EAC's Web site[14]."**

The expiration and renewal process are also made crystal clear.

**3.8. Expiration and Renewal of Accreditation.**

> "A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting an application package to the Program Director,

---

[14] Voting System Test Laboratory Program Manual (eac.gov)

25

consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5[15]."

The HAVA Act, codifies that the Commission must disseminate to the public, in matter that is consistent with US Code, Title 44, Chapter 19[16].

**Title II, Subtitle A, Pt.1 § 206. DISSEMINATION OF INFORMATION.**

"In carrying out its duties, the Commission shall, on an ongoing basis, disseminate to the public (through the Internet, published reports, and such other methods as the Commission considers appropriate) in a manner that is consistent with the requirements of chapter 19 of title 44, United States Code, information on the activities carried out under this Act

"Government publication" as used in this chapter, means informational matter which is published as an individual document at Government expense, or as required by law.""

(Pub. L. 90–620, Oct. 22, 1968, 82 Stat. 1283.)

Repeated again, in the VSTL Manual:

**"1.12. Publication and Release of Documents.**

The EAC *will* release documents consistent with the requirements of Federal law. It is EAC policy to make the laboratory accreditation process as open and public as possible. *Any documents (or portions thereof) submitted under this program will be made available to the public unless specifically protected* from release by law. *The primary means for making this information available is through the EAC Web site.* See Chapter 7 of this Manual for additional information."

As you can see, in several different ways, the publishing and dissemination of this information is meant to communicate transparency to the states and the people. Indeed, the EAC had demonstrated great

---

[15] Voting System Test Laboratory Program Manual (eac.gov)
[16] 44 U.S. Code § 1901 - Definition of Government publication | U.S. Code | US Law | LII / Legal Information Institute (cornell.edu)

26

transparency in the past. However, efforts to be transparent are currently lacking. It began to decline between 2012-2015 and has continued to degrade since that time.          (Exhibit **U**)

The important purpose of the release of certification program information is to increase public confidence and create a more informed and involved public.

**7.2. EAC Policy on the Release of Certification Program Information**.

> "The EAC seeks to make its Voting System Test Laboratory Program as transparent as possible. The agency believes that such action benefits the program by increasing public confidence in the process and creating a more informed and involved public. As such, it is the policy of the EAC to make all documents, or severable portions thereof, available to the public consistent with Federal law (e.g., Freedom of Information Act (FOIA) and the Trade Secrets Act)."

**ACCREDITATION PROCESS**

How did these laboratories actually obtain a Certificate of Accreditation? It is not simply a matter of requesting or issuing a certificate. It is a contractual process whereby certain parameters must be in place in order to be in a relationship to do business. Here are those laws set forth by the EAC in the VSTL Manual. Note that the accreditation is *"subject to"* receipt of information and EAC's review and approval of materials.

**3.1. Overview.**

> "This chapter sets forth the required steps Applicant Laboratories must perform in order to receive an EAC Voting System Test Laboratory Accreditation. The process generally includes an application for and receipt of a NIST recommendation; receipt of an EAC invitation to apply; and the successful *submission*, *acceptance* and *review* of an EAC application."

**3.4. Application.**

> "EAC is the sole authority for Voting System Test Laboratory Accreditation. While NIST's recommendation serves as a reliable indication of potential technical competency, *the EAC must take additional steps to ensure that laboratory policies are in place regarding issues like conflict of interest, record maintenance, and financial stability.* It must also ensure that the candidate laboratory is willing and capable to work with EAC in its Certification Program. To that end, applicant laboratories are required to submit a Letter of Application requesting accreditation. The letter shall be addressed to the Testing and Certification Program Director and attach (in either hard copy or on CD/DVD)"

27

**(1)** "all required information and documentation; (2) a signed letter of agreement; and **(3)** a signed certification of conditions and practices."

**3.4.1. Information and Documents**. "The applicant laboratory must submit the information and documents identified below as a part of its application. These documents will be reviewed by the EAC in order to determine whether the applicant laboratory meets the program requirements identified in Chapter 2. The grant of EAC accreditation is *subject to* receipt of the information and EAC's review and approval of the materials. The applicant laboratory shall properly label any documents, or portions of documents, it believes are protected from release under Federal law"

**3.4.3. Certification of Laboratory Conditions and Practices**. "The applicant laboratory must submit a signed Certification of Laboratory Conditions and Practices as a part of its application. No applicant laboratory will be considered for accreditation unless it has properly affirmed its conditions and practices through the certification document. A Certification of Laboratory Conditions and Practices form may be found at Attachment C and is available electronically at www.eac.gov. By signing the certification, a laboratory affirms that it, in fact, has in place the policies, procedures, practices, resources and personnel stated in the document. Any false representations made in the certification process may result in the revocation of accreditation and/or criminal prosecution."

Without valid accreditation, an issued certification of any voting system manufacturer is invalid. *A laboratory having received EAC accreditation is solely what gives that laboratory the authority to perform any testing.*

**Relevant Rules for VSTL Accreditation (VSTL Manual)**[17]

*3.6 Grant of Accreditation*. "Upon a vote of the EAC Commissioners to accredit a laboratory, the Testing and Certification Program Director shall inform the laboratory of the decision, *Issue a Certificate of Accreditation* and post information regarding the laboratory on the EAC website."

*3.6.1 Certificate of Accreditation.* "A Certificate of Accreditation shall be issued to each laboratory accredited by vote of the Commissioners. *This certificate shall be signed by the Chair of the Commission and state:"*

*3.6.1.1* "The name of the VSTL;"

---

[17] https://www.eac.gov/sites/default/files/eac_assets/1/28/VSTLManual%207%208%2015%20FINAL.pdf

*3.6.1.2* "The scope of accreditation, by stating the Federal standard or standards to which the VSTL is competent to test;"

*3.6.1.3* "The effective date of the certification, which shall not exceed a period of two years and"

*3.6.1.4* "The technical standards to which the laboratory was accredited."

*3.6.2* **Post Information on Website**. "The Progress Director shall make information pertaining to each accredited Laboratory, available to the public on EAC's website. This information shall include, but not limited to"

*3.6.2.1* "NIST's Recommendation Letter;"

*3.6.2.2*. "The VSTL's Letter of Agreement;"

*3.6.2.3*. "The VSTL's Certification of Conditions and Practices;"

*3.6.2.4*. "The Commissioner's Decision on Accreditation and;

*3.6.2.5*. "Certificate of Accreditation."

*3.8*. **Expiration and Renewal of Accreditation**.

"A grant of accreditation is valid for a period not to exceed two years. A VSTL's accreditation expires on the date annotated on the Certificate of Accreditation. VSTLs in good standing shall renew their accreditation by submitting an application package to the Program Director, consistent with the procedures of Section 3.4 of this Chapter, no earlier than 60 days before the accreditation expiration date and no later than 30 days before that date. Laboratories that timely file the renewal application package shall retain their accreditation while the review and processing of their application is pending. VSTLs in good standing shall also retain their accreditation should circumstances leave the EAC without a quorum to conduct the vote required under Section 3.5.5."

The EAC violated their own standards by failing to consistently secure a quorum. When Christy McCormick was appointed EAC Chairwoman in February 2019, the EAC reported the appointment as the first one in nearly a decade "with a full slate of Commissioners."        (Exhibit **V**)

In the United States each state is tasked to conduct an (IV & V) Independent Verification and Validation to provide assurance of the integrity of the votes. If the "accredited" non-federal entities have NOT

received EAC accreditation this is a failure of the states to uphold their own State standards that are federally regulated.

If the "accredited" non-federal entities have NOT received EAC accreditation, this is a failure of the state to uphold their federally regulated state standards.

**RSMo Stat. § 115.225 (2019), MO Code Regs. 15 CSR 30-10.020 (2020).**

**Title 52 U.S.C. § 10307(d) and § 20511(2)(B).**

In March of 2022, 35 Missouri representatives both elected and appointed, in addition to three United States EAC Commissioners and one EAC Executive Director, were served legal "Notice and Demand Affidavit of Maladministration, Misrepresentation, Misconduct and Fraud" (Exhibit **W**)

This notified every recipient of all of the information and evidence provided to you today. I have received no responses, answers or refute from any of the 39 total recipients to date.

**RSMo § 115.631. Class one election offenses.** — The following offenses, and any others specifically so described by law, shall be class one election offenses and are deemed felonies connected with the exercise of the right of suffrage. Conviction for any of these offenses shall be punished by imprisonment of not more than five years or by fine of not less than two thousand five hundred dollars but not more than ten thousand dollars or by both such imprisonment and fine:

> **(1)** Willfully and falsely making any certificate, affidavit, or statement required to be made pursuant to any provision of this chapter, including but not limited to statements specifically required to be made "under penalty of perjury"; or in any other manner knowingly furnishing false information to an election authority or election official engaged in any lawful duty or action in such a way as to hinder or mislead the authority or official in the performance of official duties. If an individual willfully and falsely makes any certificate, affidavit, or statement required to be made under section 115.155, including but not limited to statements specifically required to be made "under penalty of perjury", such individual shall be guilty of a class D felony;

> **(14)** On the part of any person whose duty it is to grant certificates of election, or in any manner declare the result of an election, granting a certificate to a person the person knows is not entitled to receive the certificate, or declaring any election result the person knows is based upon fraudulent, fictitious or illegal votes or returns;

> **(19)** Knowingly preparing, altering or substituting any computer program or other counting equipment to give an untrue or unlawful result of an election;

30

**RSMo § 115.635. Class three election offenses.** — The following offenses, and any others specifically so described by law, shall be class three election offenses and are deemed misdemeanors connected with the exercise of the right of suffrage.  Conviction for any of these offenses shall be punished by imprisonment of not more than one year or by fine of not more than two thousand five hundred dollars, or by both such imprisonment and fine:

> (11)  Attempting to commit or participating in an attempt to commit any class one or class two election offense.

**RSMo § 115.637. Class four election offenses.** — The following offenses, and any others specifically so described by law, shall be class four election offenses and are deemed misdemeanors not connected with the exercise of the right of suffrage.  Conviction for any of these offenses shall be punished by imprisonment of not more than one year or by a fine of not more than two thousand five hundred dollars or by both such imprisonment and fine:

> **(12)**  On the part of any election authority or official, willfully neglecting, refusing, or omitting to perform any duty required of him or her by law with respect to holding and conducting an election, receiving and counting out the ballots, or making proper returns;

One example of the above violations; The Missouri Secretary of State sent a letter dated December 2017 regarding the Qualifications of the Unisyn OpenElect 2.0 Voting Sytems attesting, *"having reviewed the observations of the Missouri Automated Voting Equipment Qualification Committee, the Application for Qualification, and the manufacturer's compliance with 15 C.S.R. 30-10.020, have determined that Unisyn OpenElect 2.0 Voting System, as certified by the U.S. Election Assistance Commission, **meets state criteria under section § 115.225, RSMo,** and have this date granted approval of the sale and use in Missouri of Unisyn Voting Solutions' Open elect 2.0, **as certified by the U.S. Election Assistance Commission."**                                  (Exhibit **Y**)

Pro V&V was the laboratory that administered the testing for certification of the Unisyn OpenElect 2.0 voting system, however their accreditation expired February 2017. Pro V&V's lab had no authority to be testing any critical infrastructure. There was extreme lack of due diligence on our Chief Election Director prior to affixing the Seal of his office and executing a Statement of Qualification claiming this equipment meets state requirements under § 115.225.

**RSMo §115.225. (10)** Has been tested and is certified by an independent authority that meets the voting system standards developed by the Federal Election Commission or its successor agency. The provisions of this subdivision shall not be required for any system purchased prior to August 28, 2002.

The recent Declaration filing in Pima County, AZ, (sequence number 20221470793), by Terpsehore Maras, supports this complaint.                                    (Exhibit **X**)

## CLOSING

Safety of critical infrastructure and public trust were both violated by the EAC, who took an oath to protect and defend the Constitution which guarantees our Right to vote and be heard in elections.

Compliance is not something that can be determined retroactively nor made up "on the go." Creating or modifying documents to demonstrate due diligence after the fact is both unlawful and dangerous. **Lack of valid compliance and contract renders the retrospective elections unlawful**. *(emphasis added)*. In this case, law and standard were codified for the express purpose of protecting the voice and the trust of the people. These laboratories were to be thoroughly vetted every two years. Not just because it's a good idea, but because it's the law. It would be a violation of the public trust if all government contractors with access to critical infrastructure were able to do as they pleased.

The EAC posting of VSTL contracting lab communications and accreditation is for the purpose of public, transparent, date verified, documentation of continued due diligence. This allows the American public and State officials to be certain that they are operating within the law, and that the EAC is timely receiving, acting on, and communicating with the most important task in its purview.

Distributing taxpayer dollars and holding conferences are among the least important functions such a critical commission has, yet the documentation of these activities is plentiful, dated, available to the public and well produced.

Recent attempts to issue memos, cite irrelevant code, re-date certifications with zero reference to contract, and to use Covid as an excuse as to why signatures, contracts and documents cannot be submitted, reviewed, or ratified, shows the outright disregard for the foundational purpose for the EAC oversight and management of government contractors.

These illegal acts were and are perpetrated by an unelected commission that the American people cannot fire. With zero say in the matter, our rights were risked and violated. We the People of Missouri were to be the beneficiaries of a well-executed and legal process that was signed into law to secure our trust and our voice. Instead, we have been the beneficiaries of insufficient oversight, invalid contracts,

32

mismanagement, and gross negligence. This has affected our entire state and renders the outcomes said to be assured by these systems of accountability, to be NULL and VOID.

"Fraud vitiates the most solemn contracts, documents and even judgements..., or perjured evidence, or for any matter which was actually considered in the judgment assailed."
**UNITED STATES V. THROCKMORTON**

## RESERVATION OF RIGHTS

Plaintiffs herein expressly reserve their rights in regard to any additional claims to which they may be entitled under federal law as well as under the laws of the State of Missouri, including claims arising from any violations of Missouri's Open Meetings Laws[18] or other actions of misconduct that may have been committed by Defendants. Plaintiffs

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a. The immediate and permanent removal of the State of Missouri from the Federal mandates under the HAVA.

b. The immediate and permanent removal of all electronic voting machines, equipment, and poll pads.

c. Immediately return the State of Missouri to hand-cast, and hand-counted paper ballots.

c. Decertify the 2020 election and any subsequent elections thereafter that used illegal, unlawful and unaccredited laboratories.

e. Temporarily restrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the use of electronic voting machines, equipment, and poll pads and from taking any other action to implement the use of electronic voting equipment; and

---

[18] https://ago.mo.gov/docs/default-source/publications/missourisunshinelaw.pdf?sfvrsn=20#:~:text=The%20Sunshine%20Law%20declares%20Missouri's,unless%20otherwise%20provided%20by%20law.

33

f. Preliminary Injunction prohibiting the destruction, deletion, disposal, or altering of all election data pertaining to the 2020 General election and all subsequent elections; and

g. Grant such other and further relief as may be just, equitable, and proper including without limitation, an award of attorneys' fees and costs to Plaintiffs.

Respectfully submitted this _____ day of June, 2022

Respectfully Presented, All Rights Reserved, Without Prejudice & Without Recourse /s/
Defendant/Defendant, pro se, sur juris Alison (Ali0 Graeff at 519 N. 6th St., St Charles, Missouri 63301
phone: 314-306-7111

34

## Verification

I hereby declare, certify, and state, pursuant to the penalties of perjury under the laws of the United States of America, and by the provisions of 28 USC § 1746 that all the above   and foregoing representations are true and correct to the best of my knowledge, information, and belief.

Executed in St Charles County, Missouri on this___28th___day of January in the year of Our Lord Two Thousand and Twenty-Two.

Autograph of Affiant: _____

**Notary as JURAT CERTIFICATE:**

___Missouri___   State

___St. Charles___   County

On this _28th_ day of June, 2022, before me,

_Theresa Judd_ , a Notary Public, personally appeared

_Alison M. Graeff_ Name of Affiant, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that they executed the same in their authorized capacity, and that by their autograph(s) on the instrument the person executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of the State of Missouri and that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature of Notary / Jurat

_Theresa Judd_

THERESA JUDD
Notary Public - Notary Seal
St Charles County - State of Missouri
Commission Number 15023910
My Commission Expires Aug 23, 2023