**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

**ALISON (ALI) GRAEFF,**

individually and as a
Candidate for Missouri State
Representative

**Plaintiff, *pro se,***

**v.**

**CIVIL ACTION**

**NO.: 4:22-cv-00682 RLW**

**UNITED STATES ELECTION ASSISTANCE**

**COMMISSION et al.**

**633 3rd Street NW, Suite 200**

**Washington, DC 20001**

**MISSOURI SECRETARY OF STATE JOHN J. ASHCROFT**

in his individual capacity
and in his official
capacity as Chief Elections Official

**Defendant(s),**

**PLAINTIFFS RESPONSE TO DEFEDANT ASHCROFT'S MOTION TO DISMISS AMENDED COMPLAINT AND PRELIMINARY INJUNCTION**

**Plaintiff requests this honorable court to DENY Defendant John R. Ashcroft's request for denial of Plaintiff's preliminary injunctive relief.**

**Plaintiff asks this honorable court to DENY Defendant John R. Ashcroft's Motion to Dismiss Plaintiff's First Amended Petition.**

1. Plaintiff understands the complexities of the judicial system and respects the fact that counsel is

advised. In fact, Plaintiff has sought and is currently seeking to obtain council however, due to pressure from organizations like The 65 Project www.the65project.com/filings that openly

threaten attorneys with disbarment and ethics violations that take on election cases, obtaining council has been extremely challenging. Yet Plaintiff remains undaunted in her quest to seek redress for the violations of her rights.

2. Defendant Ashcroft asserts dismissal on the grounds of meritless allegations ECF 33, 6 However, Plaintiff has provided plenty of evidence to the court contrary to his assertions (ECF 23, 21-35, exhibit 3, exhibit 8, exhibit 10). Pursuant to the congressionally passed HAVA ACT 2002 and the federal standards for laboratory testing accreditation set forth in the EAC Voting System Test Laboratory Program Manual, version 2.0, (OMB-3265-0018), Section 3.4, 3.6 and 3.8, all the laboratories used in Missouri in the November 3, 2020 election and each subsequent election held thereafter were unaccredited to test our voting systems rendering votes invalid. Wisconsin Supreme court agrees in *Teigen v WEF and DSCC et al;*

> *"Wisconsin elected officials "deriv[e] their just powers from the consent of the governed." See Wis. Const. art. I, § 1. ¶23 The right to vote presupposes the rule of law governs elections. If elections are conducted outside of the law, the people have not conferred their consent on the government. Such elections are unlawful and their results are illegitimate."*

2. Defendant Ashcroft argues the Purcell principle used in *Berry v Ashcroft*. Strongly stating, "*Berry* controls here" and asserting the granting of Plaintiffs preliminary injunctive relief would cause substantial disruption and confusion on the eve of an election. If applying the Purcell principle, I ask the court to consider the legal definition of "eve" to properly determine the relevance of it to this Complaint. "Eve" is defined as: "The period <u>immediately</u> preceding an important event" *Black's Law Dictionary 5th Addition.*

"Immediately" is defined … without any delay or lapse of time. *Drumbar v Jeddo-Highland Coal Co.*

The Plaintiffs complaint was filed June 28, 2022 and Plaintiffs First Amended Petition was filed July 22, 2022. Therefore, this complaint has not been brought before the court on the "eve" of anything. Furthermore, the Purcell principle dictates that doing so has the potential to 1) confuse voters; and 2) create problems for those officials who are actually administering the election. The relief sought by Plaintiff will have **no change** for voters, therefore no "confusion". Missouri is already printing up and distributing paper ballots to the precincts, Missouri voters are already voting on paper ballots. Plaintiffs' relief request re the removal of electronic voting systems

would also not create problems for election administrators either. Missouri has been hand counting ballots for hundreds of years, and election officials are already in the process of hiring poll workers. *Purcell* or *Berry* falls flat in the Defendants argument.

3. Presuming, as Missouri's Chief Election Official, that an emergency plan is already in place, should a cyber-attack, natural disaster, any other sort of electrical outage occur leading up to, or on election day, rendering machines unavailable. In fact, in Missouri, the threat of cyber-attacks on these machines is so great, that Federally contracted agencies such as CIS (subsidiary of CISA) have already been brought into our state and local elections. Surely, Missouri already has a fully prepared plan for alternative forms of casting a ballot that does not involve the use of electronic voting systems. Any sort of hinderance brought on election administrators would simply be teaching poll workers how to count paper ballots.

4. Plaintiff would also like to remind the Court, and the Defendant, that ample opportunity was given, though the extension granted by the Court, and through the Notice of Maladministration and Affidavit (Exhibit 23, 24), served to the Defendant on January 13, 2022, via certified mail #70211970000053540590 of "notice" of Plaintiffs claims. Additional, Plaintiff discussed this matter with Defendant in person at a Town Hall meeting for "Election Integrity" in Melville, Missouri on February 19, 2021 to which Defendant not only laughed in Plaintiffs face but was rude, arrogant and dismissive of Plaintiffs concerns.

In addition to Defendant, Plaintiff also notified these county election authorities via certified mail.

| | |
|---|---|
| Tammy Brown – Jackson Co Rep Election Director | Sara Zorich – Jackson Co Democrat election director |
| Jim McKinzie – Jackson Co Asst Election Director | Lisa Cayer – Jackson Co Asst Election Director |
| Michael K Whitehead – Jackson Co election Chairman | Kurt Bahr – St. Charles Co Director of Elections |
| Eric Fey – St. Louis County Director of Elections | Rick Stream – St. Louis Co Director of Elections |
| Jerry M Hunter – St. Louis City Election Chairman | Leo G Stoff Jr – St. Louis City Rep Election Director |
| D. Benjamin Borgmeyer - St. Louis City Democratic Election Director | Geraldine Kraemer - St. Louis City Election Commissioner |
| Darla Wierzbicki – Clay County Republican Election Chairman | Patty Lamb - Clay County Republican Election Director |
| Tiffany Francis - Clay County Democrat Election Director | |

(exhibit 23-24)

Not **one Missouri official listed** to date, has provided **any fashion** of reply, refute, answer or even acknowledgement of receipt.

**5.** Plaintiff seeks an Order that the Defendants adhere to the constitutionally protected process of collecting and counting votes that ensures integrity and transparency. This is to require hand-marked paper ballots that can be cast with anonymity, following all Missouri state election laws, and hand-counted by residents of the state of Missouri as Missouri Election law allow. Additionally, Plaintiff(s) seek redress for the abuse and devastation of our natural and constitutional rights and protections currently being infringed upon by our elected officials.

## 6. FRCP RULE 8

Plaintiff met FRCP 8 (a) (2) Claim for relief – ECF 23, 43-48

Plaintiff met FRCP 8 (a) (1) The entirety of the case is summed up for Defendant at the beginning of the Amended Petition in 5 short concise lines. I've provided illustration, should Defendant understand it better with pictures. ECF 33, 3



IV.
STATEMENT OF FACTS

1. Plaintiff incorporates the foregoing paragraphs as if set forth in full herein.

2. Voting System Laboratory Accreditation(s) enacted through the Help America Vote Act 2002 are administered by the U.S. Election Assistance Commission. The state of Missouri adopted HAVA August 2003, MO HB 511 (2003). The state of Missouri failed to be in compliance with the **HELP AMERICA VOTE ACT 2002, Subtitle B § 231 (a) (1) (2) (b) (1)** and the federal standards for laboratory testing accreditation set forth in the **EAC Voting System Test**

4

PLAINTIFFS FIRST AMENDED PETITION
OP 6/28/22

**Laboratory Program Manual, version 2.0, (OMB-3265-0018)**[1]**, Section 3.4, 3.6 and 3.8, during** the November 3, 2020, General Election and subsequent elections thereafter.



Nevertheless, its bears repeating, for clarification purposes, that under Secretary of State Ashcroft, aka Chief Election Official, ECF 23 @ 10, 82-86, reads "The state of Missouri failed to be in compliance with the HELP AMERICA VOTE ACT 2002, Subtitle B § 231 (a) (1) (2) (b) (1) and the federal standards for laboratory testing accreditation set forth in the EAC Voting System Test Laboratory Program Manual, version 2.0, (OMB-3265-0018) , Section 3.4, 3.6 and 3.8, during the November 3, 2020, General Election and subsequent elections thereafter.

Plaintiff met FRCP 8 (a) (3) Demand for the relief sought is the removal of all electronic voting equipment used in the state of Missouri, Preservation of all Nov 3, 2020 election data, Return the

state to hand-cast, hand-counted paper ballots and if the court so wishes, to impose civil penalties against Defendant John Ashcroft.

**7. FRCP RULE 12 -**

Plaintiff met FRCP 12 (b) 6 ECF 33, 5(B)- Defendant states "Plaintiffs allegations do no more than give rise to speculation in light of various circumstance explored by Plaintiff". The claims made in this complaint are factual, are supported with evidence, and the specific law that supports it. Not speculation. The Laboratories used to certify Missouri's electronic voting systems were not, and currently do not, meet the required mandated standards set forth under the 2002 Help America Vote Act and the EAC policy guidelines.

Plaintiff brings this cause of action under original federal jurisdiction 52 U.S.C. § 20511 (42:15483) HAVA, 42:1983cv Civil Rights Act - Civil Action for Deprivation of Rights, 42:1983vp Violation of Due Process and Equal Protection, 42:1985 Conspiracy to interfere with civil rights, 42:1986 Neglect of Duty, 52 U.S.C. § 10101 (42:1971) Voting Rights Law, 28:1331dp Violation of Due Process (federal question), 28:1331vc Violation Constitutional Rights (federal question), and cause of action recognized in Ex parte Young, 209 U.S. 123 (1908) as well as its progeny to challenge government officers during an "ongoing violation of federal law and [to] seek[] prospective relief" under the equity jurisdiction conferred on federal district courts by the Judiciary Act of 1789.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 because this action seeks to protect civil rights under the Fourteenth Amendment to the United States Constitution.

This Court has supplemental jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1367.

This Court has authority to grant declaratory relief based on 28 U.S.C. §§ 2201, 2202, and Rule 57 of the FRCP.

This Court has jurisdiction to grant injunctive relief based on 28 U.S.C. § 1343(a)(3) authority to do so under FRCP 65.

This Court has jurisdiction to award nominal and compensatory damages under 28 U.S.C. § 1343(a)(4).

There exists an actual and justiciable controversy between Plaintiff(s) and Defendant(s) requiring resolution by this Court.

Plaintiff(s) have no adequate remedy at law. This is a case of first impression.

8. Defendant Ashcroft sites *Dataphase Sys* to argue Plaintiff fails to state plausible claims for relief. The two-prong test for standing to challenge an agency action involves "(1) Does the

challenged action cause the petitioner injury in fact? and (2) is the interest allegedly injured arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question?" *Id. (citing Ass'n of Data Processing Serv. Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)).* Under the first prong, "injury in fact," this court should consider whether the complaint alleges injuries that are a direct result of the agency action. This prong presents a low bar. "[A]n '[i]njury alleged, which is remote in time or which will only occur as an end result of a sequence of events set in motion by the agency action challenged, can be a sufficiently direct result of the agency's decision to serve as a basis for standing.'" *(Quoting WED, 69 Wis. 2d at 14 (second modification in the original)).* Under the second prong, the court should consider whether 'the injury is to an interest which the law recognizes or seeks to regulate or protect.'" *Id., (quoting Waste Mgmt. of Wis., Inc. v. DNR, 144 Wis. 2d 499, 505, 424 N.W.2d 685 (1988)).*

9. Petitioner has suffered an injury in fact to her right to vote. See Wis. Stat. § 6.84(1) ("The legislature finds that voting is a constitutional right, the vigorous exercise of which should be strongly encouraged.") *The Republican National Committee et al.*, an amicus curia, emphasizes, "[e]lections are one of the most important features of our Republic, and upholding the rules and procedures prescribed for elections, according to the laws enacted by the Legislature, reinforces the sanctity of the rule of law and reassures all Americans of the integrity of our elections."

10. Voters are entitled to have the elections in which they participate administered properly under the law. Defendant was elected to office 2016 as Missouri' Secretary of State. VVSG version 1.0 standards were adopted by the EAC December 13, 2005 and revised and updated March 31, 2015 to VVSG version 1.1. All electronic voting machines used throughout the state of Missouri have been and continue to be tested against 2005 Voluntary Voting System Guidelines (VVSG), version 1.0, seventeen years old. Infrastructure so critical to National Security vulnerable to hacking, attacks, and malicious coding per DHS and CISA the EAC has and continues to fail in accrediting the very first line of defense, the laboratories. Is this not a concern for Defendant Ashcroft, Missouri's chief election official? (*See* Declaration of Shawn A. Smith)

To put this in perspective, the iPhone was first released in 2007.

As long as Defendant has been in office the EAC laboratories have not been legally accredited per HAVA requirements. If it is the chief election official's duty to protect our elections, why has something with such massive implications gone unaddressed for so long?

11. Beginning in 2017 when the EAC failed to accredit the laboratories, Defendant should have taken steps to rescind legislation MO HB 511 to remove the state from HAVA mandates and taken action to secure independent laboratories that would test and certify Missouri election systems. This has been an ongoing crime against the legality of my vote for nearly a decade.

12. If the right to vote is to have any meaning at all, elections must be conducted according to law. With the continued use of illegal infrastructure in Missouri elections, even if Plaintiff is allowed to check a box on a ballot, Plaintiff possesses only a hollow right. Plaintiff's rulers derive their power from force and fraud, not the people's consent. By contrast, in Missouri, elected officials "deriv[e] their just powers from the consent of the governed." *See MO. Const. Art. I, § 1.*

13.It is the responsibility of the people to correct their government when that government does not confer this security. *Mo. Const. Article 1 §§ 3, 2 states,*

"That the people of this state have the inherent, sole and exclusive right to regulate the internal government and police thereof, … whenever they may deem it necessary to their safety and happiness, provided it not be repugnant to the Constitution of the United States."

14. Defendant's claim about the likelihood of Plaintiff's success on merits is pure speculation. In contrast, the failure to follow election laws is a fact which forces everyone to question the legitimacy of election results. Electoral outcomes obtained by unlawful procedures corrupt the institution of voting, degrading the very foundation of free government and infringe upon the civil rights of individuals. The Plaintiff, as well as all lawful Missouri voters, are injured when the institution charged with administering Missouri elections does not follow the law, leaving the results in question.

The purity and integrity of elections is a matter of such prime importance, and affects so many important interests, that the courts ought never to hesitate, when the opportunity is offered, to test them by the strictest legal standards. A man with an obscured vote may as well be "a man without a vote," and without the opportunity for judicial review, such a man "is without protection; he is virtually helpless." *See 106 Cong. Rec. 5082, 5117 (1960) (statement of Sen. Lyndon B. Johnson).*

15. Missouri Laws 536.050 affords Plaintiff relief because the machines "interfere" with or impair or at the very least, "threaten to interfere with or impair," their "legal rights and privileges[.]

16. Unlawfully conducted elections threaten to diminish or even eliminate voices, destabilizing the very foundation of free government. Plaintiff has standing to ensure she retains her electoral voice. *See generally Trump v. Evers, No. 2020AP1971-OA, unpublished order, at 6* (Rebecca Grassl Bradley, J., dissenting) ("[T]he integrity of every election will be tarnished by the public's mistrust until the Wisconsin Supreme Court accepts its responsibility to declare what the election laws say.").

**RIPE QUESTIONS BEFORE THE COURT**

Due to Secretary of State Ashcroft's failure to follow RSMo 115.225 § 2 (10) by ensuring the electronic voting machine systems used throughout the state were certified by an EAC accredited laboratory in the November 3, 2020 elections (and every subsequent election since), these questions remain. All other avenues for determining the case have been exhausted, there exists a real controversy, and the law needs to be settled on one or more issues raised by the case.

- What happens to my vote, cast on a machine, tested and "certified" by a laboratory, that has not been accredited under the mandates of HAVA? **15 CSR 30-10.020, US CONST. amend XIV.**
- If the electronic voting systems and their various devices are not lawfully certified, is the effect that Plaintiff casts an illegal ballot? 52 U.S.C. § 10307(a), Due Process Clause.
- Since Missouri election officials presented to the public uncertified voting systems as certified, did they abridge the Plaintiff(s)' federally protected right to vote, as well as affronted **RSMo. 115.631 § (1), 115.635 § (3) & (11), 562.031, 562.036, 562.041, 18 U.S.C. § 245**
- Would it dilute the expressed intent and effectiveness of the Plaintiff(s)' voice if the electronic voting systems and their various devices are vulnerable to hacking, tampering, and algorithmic preprogramming? **HAVA Title II Subtitle A Part III § 221 (e)(2), Right to Vote Clause.**
- If the electronic voting systems are – by design – unreliable mechanisms for accurately collecting, retaining, and communicating the expression of the Plaintiff(s)' vote, is it

acceptable to injure the Plaintiff(s)' voice and will under the Constitutional premise of the consent of the governed? **Declaration of Independence, Guarantee Clause**.

**CONCLUSION**

Plaintiff asks the Court to deny the Defendants Motion to Dismiss Amended Petition. Under FRCP 56 (e), Defendant has failed to properly address the Plaintiff' issue of the unaccredited EAC laboratories brought before this Honorable Court.

For the above stated reasons, the court should deny Defendant Motion to Dismiss Amended Petition and grant Plaintiffs Preliminary Injunction.

September 9, 2022

Respectfully submitted by,

/s/ Alison (Ali) Graeff

*pro se litigant*

Ali Graeff
519 N 6th Street
St. Charles MO 63301
Ali@noMOfraud.com
314.306.7111