**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALISON GRAEFF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CV-682 RLW |
| | ) | |
| UNITED STATES ELECTION | ) | |
| ASSISTANCE COMMISSION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on a number of motions.  Pending before the Court is Plaintiff Alison Graeff's motion for a preliminary injunction.  (ECF No. 8).  All the defendants oppose Plaintiff's motion.   Also pending before the Court is a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), filed by Defendant United States Election Assistance Commission ("EAC") and its Commissioners, Defendants Thomas Hicks, Christy McCormick, Benjamin W. Hovland, and Donald L. Palmer (collectively, "the Federal Defendants").[1]   (ECF No. 31).   In addition, Defendant John J. Ashcroft, the Missouri Secretary of State, filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[2] (ECF No. 32).   Plaintiff opposes Defendants' motions to dismiss, which are fully briefed and ripe for review.[3]   For the reasons that follow, the Court grants the Federal Defendants' motion to dismiss for lack of subject matter jurisdiction and denies without prejudice Plaintiff's motions for

---

[1]Plaintiff is suing the EAC Commissioners in their official and individual capacities.

[2]Plaintiff is suing Defendant John J. Ashcroft in his official and individual capacities.

[3]Plaintiff recently filed a Motion for Partial Summary Judgment, which is not fully briefed. (ECF No. 53).

preliminary injunction and for partial summary judgment and Defendant Ashcroft's motion to dismiss for failure to state a claim.

## *I.   Background*

### A.  Allegations in Amended Complaint

Alison Graeff, who is proceeding in this matter without the assistance of counsel, is a Missouri voter and a former candidate for Missouri's 106th House district.   Plaintiff alleges in her Amended Complaint that in the November 2020 general election, Missouri used electronic voting systems that were not tested by properly accredited test laboratories, and that Missouri continues to use the same voting systems today in violation of federal and state election laws.   More specifically, Plaintiff alleges that the State of Missouri used and continues to use electronic equipment tested by three laboratories – SLI Compliance, NTS Huntsville Laboratory ("NTS"), and Pro V&V.   According to Plaintiff, these three laboratories were not properly accredited or certified by the EAC at the time they performed their testing.   In her Amended Complaint, Plaintiff seeks to enjoin the defendants from continuing to use voting systems tested by these three test laboratories and to force the State of Missouri to use hand-counted, paper ballots for future elections.

As background, in 2002, Congress passed the Help America Vote Act of 2002, 52 U.S.C. §§ 20901, et seq., ("HAVA"), which established the EAC.   Under HAVA, the EAC is charged with providing for the "testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories."   52 U.S.C. § 20971(a)(1).   Under this authority, the EAC, in conjunction with the National Institute of Standards and Technology, set up a Testing and Certification Program, which is designed to ensure that competent laboratories are

testing voting systems and software, and that they are following accepted standards in their testing. As part of this program, the EAC promulgated the Voluntary Voting System Guidelines ("VVSG"). The VVSG are used to guide the EAC's implementation of the Testing and Certification Program. Under the Testing and Certification Program, independent testing laboratories are certified and accredited as a Voting System Test Laboratory ("VSTL") by the EAC. "[N]o laboratory may be accredited for purposes of this section unless its accreditation is approved by a vote of the [EAC]." 52 U.S.C. § 20971(b)(2)(A).

Under HAVA, states may choose to participate in EAC's Testing and Certification Program. "At the option of a State, the State may provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the [EAC] under this section." 52 U.S.C. § 20971(a)(2). According to the Amended Complaint, Missouri "adopted" HAVA, yet the state "failed to be in compliance with the [HAVA] Subtitle B § 231(a)(1)(2)(b)(1) and the federal standards for laboratory testing accreditation set forth in the EAC Voting Systems Test Laboratory Program Manual, version 2.0, (OMB-3265-0018), Sections 3.4, 3.6 and 3.8 during the November 3, 2020 General Election and subsequent elections thereafter." (ECF No. 23 at 10-11).

The Amended Complaint alleges Missouri is not in compliance with HAVA in that the State used and continues to use election equipment that was not tested by a properly accredited VSTL. Plaintiff contends that Missouri has used and continues to use voting systems and software that were tested by NTS, SLI Compliance, and Pro V&V. According to Plaintiff, these three testing laboratories were not properly accredited as VSTLs under the EAC's Testing and Certification Program at the time they tested Missouri's election equipment, and because they were

3

without proper accreditation, "an issued certification of any voting system" from these three companies was "invalid."   (Id. at 31).

With regard to NTS, the Amended Complaint alleges that the State of Missouri used NTS to test the Unisyn OpenElect software 1.3, which was used by 66 Missouri counties in the "2020 election."   (Id. at 23).   However, according to Plaintiff, NTS never received "legal accreditation" from the EAC to be a VSTL, "nor is there a Certificate of Accreditation available on the EAC website as dictated by HAVA" and, therefore, NTS had no authority "to test our voting machines" and use of the equipment NTS tested was in violation of EAC's policies and HAVA.   (Id. at 22).

Plaintiff also alleges SLI Compliance was not a properly accredited VSTL.   According to the Amended Complaint, SLI Compliance tested software and voting machines that were used in 10 Missouri counties.   SLI Compliance also did testing "for the electronic voting system Hart InterCivic Verity Voting."   (Id. at 26).   Plaintiff acknowledges that at one time SLI Compliance was accredited as a VSTL, but according to Plaintiff, SLI Compliance's accreditation has expired. Plaintiff alleges SLI Compliance's "Certificate of Accreditation" was issued in 2007, but it was not properly renewed and, therefore, the laboratory was not in compliance with EAC policies or HAVA.   Plaintiff further alleges that in 2018, SLI Compliance was given a three-year VSTL accreditation, "even though law states the effective date of certification shall not exceed a period of two years."   (Id. at 24).   Moreover, SLI Compliance's 2018 Certificate of Accreditation was signed by Brian Newby, EAC's Executive Director, not by the EAC's Chairman "as law requires."[4]   (Id. at 24).

---

[4] The Amended Complaint alleges that SLI Compliance's current Certificate of Accreditation also was not signed by the EAC's Chairman, but instead by the Director, Mona

Plaintiff further alleges that Pro V&V was not properly accredited as a VSTL with the EAC.   According to the Amended Complaint, Pro V&V received its original Certificate of Accreditation to be a VSTL in 2015, and the certification should have been renewed in 2017 and 2019 but was not.   Moreover, Pro V&V's Certificate of Accreditation was signed by Alice Miller, EAC's Executive Director, not by the EAC Chairman "as law requires."   (Id. at 26).[5]   Plaintiff further alleges that the EAC has falsely stated that Pro V&V was and has been an accredited VSTL, when "current certification under Title 52 U.S.C. Chapter 209 [has] not been followed to render legal accreditation."   (Id. at 30).   Plaintiff alleges Pro V&V "was not accredited during the time it falsely claims the machines were accredited and in use in the [S]tate of Missouri and nationwide."   (Id.).

According to the Amended Complaint, Missouri's Secretary of State and the EAC "knowingly allowed Missourians to vote on networked machines that were not certified due to lack of accredited VSTL(s) since the November 3, 2020 elections."   (Id. at 41).   "This onerous conduct renders the [election] results void." (Id. at 41).   "[A]ny votes cast through an uncertified electronic voting machine [are] null and void."   (Id. at 43).   Moreover, "[t]he Defendants continued to certify election results knowing they violated Missourian's [sic] civil liberties subsequently forcing Plaintiff into fraudulent contracts with illegally elected government officials: providing said officials with unlawful power to enforce actions under color of law coercing and subjecting Plaintiffs [sic] into servitude in which our liberty to determine our own course and way

Harrington.

[5]Plaintiff contends Pro V&V's current Certificate of Accreditation was also signed by Mona Harrington, the Director, not the Chairman of the EAC.

5

of life has been strong armed from us."   (Id. at 42).   The EAC has "failed to perform its duties to The People in safeguarding and securing our electronic voting systems, our critical infrastructure, and our voices."   (Id. at 43).   "This violates my rights as a citizen, silences my voice as a voter, eliminating my right to express my political opinion on who governs my state and my fundamental right to vote." (Id.)

Based on these allegations, Plaintiff brings the following six counts against all the defendants in this case: "Violation of Procedural Due Process UNDER 42 U.S.C. § 1983 and 28 U.S.C § 1331 (1st, 14th, and 15th Amendments)" (Count I); "Violation of Substantive Due Process UNDER 42 U.S.C. § 1983, 18 U.S.C. § 245 (Fourteenth Amendment, Equal Rights)" (Count II); "Deprivation of Civil Rights UNDER 42 U.S.C. § 1983, 42 U.S.C. § 1985(3) (MO Const. Art. I, § 14 and Art. I, § 10)" (Count III); Deprivation of Constitutional Rights UNDER 28 U.S.C. § 1331 (MO Const. Art. I, § 14; Art. I, § 10; Art. I, § 25; Art. XI, § 3)" (Count IV); "Voting Rights Violation UNDER 52 U.S.C. § 20511(2)(b) (U.S. Constitutional First and Fourteenth Amendments) Missouri Const. Article I, § 25" (Count V); and "DECLARATIVE JUDGMENT UNDER 28 U.S.C. § 2201" (Count VI).   (Id. at 49-55).

Plaintiff seeks the following for relief in this case: (1) "[t]he immediate and permanent removal of the State of Missouri from the Federal mandates under the HAVA," (2) "[t]he immediate and permanent removal of all electronic voting machines, equipment, and poll pads in the State of Missouri"; (3) the "immediate[] return" of the State of Missouri "to hand-cast[] and hand-counted paper ballots"; (4) an order enjoining Defendants from "implementing or enforcing the use of electronic voting machines, equipment, and electronic poll pads and from taking any other action to implement the use of electronic voting equipment[] in all future Missouri elections";

and (5) an order prohibiting the Missouri Secretary of State and all state election officials "from deletion, destruction, disposal, or altering of all election data pertaining to the November 3, 2020 General election in the State of Missouri." (Id. at 55-56).

### B.  Motion for Preliminary Injunction

When Plaintiff initiated this case of action, she filed a motion for a temporary restraining order, which the Court denied on June 30, 2022.[6]  Following the denial, Plaintiff moved for the entry of a preliminary injunction.   Plaintiff asks that the Court enjoin the defendants from "implementing or enforcing the use of electronic voting machine, equipment, and electronic poll pads in the August 2, 2022 Missouri Primaries and the November 8, 2022 Missouri General Election and from taking any other action to implement the use of electronic voting equipment[] in all future Missouri elections."   (ECF No. 8 at 20).   Plaintiff further asks that the Court "[p]rohibit the Missouri Secretary of State, and all election officials in the state of Missouri from deletion, destruction, disposal, or altering of all election data pertaining to the November 3, 2020 General election in the State of Missouri."   (Id.).   Plaintiff's motion for preliminary injunction, which all the defendants oppose, remains pending before the Court.

### C.  Motions to Dismiss

Defendants did not answer Plaintiff's Amended Complaint, instead they moved to dismiss the cause of action.   The Federal Defendants filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).   The Federal Defendants argue Plaintiff cannot

---

[6]This case was initially assigned to the Honorable Sarah E. Pitlyk.   On July 15, 2022, following Judge Pitlyk's recusal, this case was transferred to the undersigned.   (ECF Nos. 15 & 16).

establish Article III standing in that Plaintiff has not articulated a concrete and particularized injury-in-fact.   These defendants also argue that any injury Plaintiff has alleged is incapable of being redressed by the Federal Defendants.   The Federal Defendants further argue that Plaintiff's claims with regard to the 2022 elections are moot, and that they are entitled to sovereign immunity.

Defendant Ashcroft also moves to dismiss the claims against him.   Defendant Ashcroft filed a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendant Ashcroft argues that Plaintiff's 57-page Amended Complaint is verbose, repetitive, and incoherent.   He argues the Amended Complaint fails to meet the pleading requirements of Fed. R. Civ. P. 8(a), and Plaintiff fails to state a plausible claim for relief against him.   Plaintiff opposes both motions to dismiss.

## II.  Discussion

Federal Courts are courts of limited jurisdiction.   "The requirement that jurisdiction be established as a threshold matter springs from the nature and limits of the judicial power of the United States and is inflexible and without exception."   Kessler v. Nat'l Enterprises, Inc., 347 F.3d 1076, 1081 (8th Cir. 2003) (quotation marks and quoted case omitted).   If the Court does not have jurisdiction, it does not have the power to rule on the merits and must dismiss the action.   Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006).   Accordingly, Court has an obligation to determine whether subject-matter jurisdiction exists before turning the merits of a case, including Plaintiff's motion for the entry of a preliminary injunction.   Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists[.]").   The Court, therefore, will first take up the Federal Defendants' motion to dismiss for lack of subject matter jurisdiction.

8

## A.  Article III Standing

In their motion to dismiss, the Federal Defendants raise the issue of standing.   They argue that the allegations in Plaintiff's Amended Complaint fail to establish the required elements of Article III standing, and her suit should be dismissed for lack of subject matter jurisdiction.

Article III of the U.S. Constitution "limits the category of litigants empowered to maintain a lawsuit in federal court" to those with "actual cases or controversies."   Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).   Federal courts are only authorized to hear cases or controversies that present actual imminent injury, which is caused by the named defendants, and can be redressed by a favorable decision.   Id.   These requirements have been established as the constitutional minimum to ensure that federal courts adjudicate real disputes and not hypothetical or abstract claims.   Standing is jurisdictional and a threshold issue in every federal case.   Warth v. Seldin, 422 U.S. 490, 498 (1975); Disability Support All. v. Heartwood Enterprises, LLC, 885 F.3d 543, 547 (8th Cir. 2018).

Plaintiff, as the party invoking federal jurisdiction, bears the burden of demonstrating the following: (1) that she suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); United States v. Metro. St. Louis Sewer Dist., 569 F.3d 829, 833–34 (8th Cir. 2009).   Foremost among the three requirements is injury in fact.   To establish injury in fact, Plaintiff must show that she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc., 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560).   When a case is at

the pleading stage, the plaintiff must "clearly allege facts demonstrating" each element of standing. Spokeo, Inc., 578 U.S. at 338 (citing Warth, 422 U.S. at 518) (cleaned up).

Here, Plaintiff alleges the defendants allowed voting systems and software used in Missouri's elections to be tested by laboratories that were not properly accredited or certified under the EAC's testing program.   Plaintiff devotes pages of her Amended Complaint to detailing the EAC's Testing and Certification Program, and how NTS, SLI Compliance, and Pro V&V were not properly certified or accredited as VSTLs.   As for injuries, Plaintiff alleges she and other Missourians "have constitutionally protected interests in the benefits that come from the right to vote and not be subject to the illegal voting systems/equipment, software, and modifications, including the ability to pursue our First Amendment right to legal elections without being subject to casting an illegal vote that violates federal and state laws."   (ECF No. 23 at 50, ¶¶ 1038-41; 52, ¶¶ 1094-97).   Further, that "Plaintiffs [sic] were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering formed contracts with representatives through deceptive practices and fraudulent certifications."   (Id. at 51, ¶¶ 1054-56; 51, ¶¶ 1073-75; 52, 1109-1111; 53 1134-36; 54, ¶¶ 1157-59).   Notably, while Plaintiff alleges that the three laboratories were not properly certified or accredited, she does not allege that they failed to test the voting systems or software used in Missouri, or that they did not follow accepted standards in their testing.   The Amended Complaint also does not allege that Missouri's uncertified voting systems and software failed to properly tabulate votes or that the results of any elections, including the one in which Plaintiff was a candidate, were inaccurate.   Plaintiff's claimed injuries rest solely on the defendants' alleged statutory and regulatory violations, which she asserts nullify her and other Missourians' votes.

### 1.  Plaintiff's alleged harm is not particularized

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."  Spokeo, Inc., 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560 n.1).  When the alleged injury is undifferentiated and common to all members of the public, courts routinely dismiss such cases as "generalized grievances" that cannot support Article III standing.  United States v. Richardson, 418 U.S. 166, 173–75 (1974).  Courts across the country have dismissed dozens, if not hundreds, of suits challenging election laws on the ground that the plaintiffs failed to allege particularized injuries in fact.  See, e.g., Wood v. Raffensperger, 981 F.3d 1307, 1313 (11th Cir. 2020) (plaintiff's interest in "ensur[ing that] ... only lawful ballots are counted" did not amount to particularized injury to confer standing); Nolles v. State Comm. for Reorganization of Sch. Districts, 524 F.3d 892, 900 (8th Cir. 2008) (plaintiffs failed "to allege a specific individualized injury . . . resulting from the allegedly unfair election, that is, an injury not shared by all the voters who voted as they did in the referendum election."); Crist v. Comm'n on Presidential Debates, 262 F.3d 193, 195 (2d Cir. 2001) ("a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared ..."); Becker v. Fed. Election Comm'n, 230 F.3d 381, 389 (1st Cir. 2000) ("the harm done to the general public by [alleged] corruption of the political process is not a sufficiently concrete, personalized injury to establish standing"); King v. Whitmer, 505 F. Supp. 3d 720, 739 n.11 (E.D. Mich. 2020) (voters failed to allege redressable, particularized injury); Moore v. Circosta, 494 F. Supp. 3d 289, 312 (M.D.N.C. 2020) ("[T]he notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury in fact necessary for Article III standing); Donald J. Trump for President, Inc. v. Cegavske, 488 F. Supp. 3d 993, 999–1000 (D. Nev. 2020) ("As with other generally available

grievances about the government, plaintiffs seek relief on behalf of their member voters that no more directly and tangibly benefits them than it does the public at large.") (internal quotations and modifications omitted); <u>Martel v. Condos</u>, 487 F. Supp. 3d 247, 252 (D. Vt. 2020) ("If every voter suffers the same incremental dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); <u>Paher v. Cegavske</u>, 457 F. Supp. 3d 919, 926–27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."). "[V]oters can challenge a state election procedure in federal court only in limited circumstances, such as when the complained of conduct discriminates against a discrete group of voters." <u>Nolles</u>, 524 F.3d at 898. In general, plaintiffs alleging election law violations lack standing to sue unless they can show they suffered or will suffer an injury that impacts them more than the general public. In short, a claim involving a voting injury "requires a point of comparison." <u>Wood</u>, 981 F.3d at 1314.

An alleged violation of an election law alone is not enough. In <u>Lance v. Coffman</u>, 549 U.S. 437 (2007), for example, a group of voters alleged that a provision in the Colorado Constitution allowing congressional redistricting only once per census violated their right under the Elections Clause of the U.S. Constitution to have their elected representatives establish their congressional districts. <u>Id.</u> at 438. The Supreme Court held that the voters lacked Article III standing because "[t]he only injury" the plaintiffs had asserted was "that the laws—specifically the Elections Clause—[had] not been followed." <u>Id.</u> at 442. Noting the plaintiffs asserted no particularized stake in the litigation, the Supreme Court ruled the case was "precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to

countenance[.]" Id.   In other words, the relief the plaintiffs sought would have no more directly benefitted them than the public at large.   See also Richardson, 418 U.S. 166 (dismissing citizen suit challenging Justice Black's appointment to the Supreme Court because plaintiff had no interest in the suit "other than that of a citizen and a member of the bar of this Court."); Fairchild v. Hughes, 258 U.S. 126 (1922) (finding citizens who challenged the procedures by which the Nineteenth Amendment was ratified lacked standing to sue because they sought to assert the right possessed by every citizen – "to require that the Government be administered according to law and that the public moneys not be wasted.").   But see United States v. Hays, 515 U.S. 737, 742 (1995) (voter plaintiffs residing in racially gerrymandered districts could challenge redistricting as racially discriminatory); Baker v. Carr, 369 U.S. 186, 207–08 (1962) (finding plaintiffs had Article III standing where voters had alleged a state statute "disfavors the voters in the counties in which they reside, placing them in a position of constitutionally unjustifiable inequality vis-a-vis voters in irrationally favored counties.").

Plaintiff makes generalized grievances against the defendants in this case.   Throughout the Amended Complaint, she appears to be challenging as a citizen and voter in Missouri the defendants' alleged failure to uphold federal and state election laws.   Plaintiff alleges the defendants failed to properly certify three laboratories that tested voting systems and software used in Missouri's elections, and this failure in turn violated her civil rights and the civil rights of "The People."   (ECF No. 23 at 43).   In failing to safeguard and secure the state's electronic voting systems, Plaintiff asserts the defendants have "violate[d] my rights as a citizen, silence[d] my voice as a voter, eliminating my right to express my political opinion on who governs my state and my fundamental right to vote." (Id. at 43).   Plaintiff does not differentiate her interests from the

13

interests of the voting public at large.   In fact, she expressly asserts that with this suit, she seeks to protect the rights of all Missouri voters.   These allegations fall short of a particularized injury in fact.

Plaintiff, however, was at one time a candidate for state office.   The Eighth Circuit has recognized that candidates may have an interest that is separate and apart from voters.   Candidates for office "have a cognizable interest in ensuring that the final vote tally accurately reflects the legally valid votes cast.   An inaccurate vote tally is a concrete and particularized injury to candidates …." Carson v. Simon, 978 F.3d 1051, 1058 (8th Cir. 2020) (footnote omitted). See also Whitfield v. Thurston, 3 F.4th 1045, 1047 (8th Cir. 2021) (recognizing that the plaintiff's "interest in this case was predicated on his status as an Independent candidate").   Although Plaintiff describes herself "[a]s a candidate, a citizen, and a voter," she does not assert particularized injury to herself as a candidate.   In her Amended Complaint, she focuses almost exclusively on her purported injuries as a citizen and a voter.   See, e.g., ECF No. 23 at 37 (alleging that the current system "nullifies any vote cast through electronic voting systems" and that "[t]his violates [Plaintiff's] rights as a citizen" and "silences [her] voice as a voter, eliminating [her] right to express [her] political opinion on who governs [her] state and [her] fundamental right to vote").   And as discussed above, Plaintiff's emphasis is on the election law violations themselves, which she asserts void and nullify Missouri's elections.   Importantly, Plaintiff does not allege that due to the defendants' alleged misconduct, the results of the elections are inaccurate, that the outcomes should have been different, or that she received more votes than what the uncertified machines

14

tabulated.   Moreover, Plaintiff is no longer a candidate for office – she lost by a wide margin.[7] Despite being a former candidate for public office, Plaintiff has not alleged or shown facts that she suffered or will suffer an injury that impacts her more than the general public.   See Stein v. Cortés, 223 F. Supp. 3d 423, 432-33 (E.D. Pa. 2016) (finding no standing where the plaintiff, an unsuccessful candidate, alleged that Pennsylvania's electronic voting machines may be susceptible to hacking).   The Court finds Plaintiff has not alleged or established a particularized harm that meets the standing requirements under Article III.

### 2.  Plaintiff's injury is not sufficiently concrete.

In addition to being particularized, Plaintiff's alleged injury must be concrete.   In her Amended Complaint, Plaintiff alleges the Federal Defendants ignored and violated provisions of HAVA, in that they failed to properly certify VSTLs.   According to the Amended Complaint, some of the provisions of HAVA have been adopted and incorporated into Missouri State law, and Defendant Ashcroft violated provisions of HAVA adopted by the State allowing uncertified voting systems to be used in Missouri elections.

Setting aside the question of whether there is an enforcement mechanism for a private right of action under HAVA, a violation of a statute alone is not enough to confer standing.[8]   The Supreme Court in Spokeo instructed that an alleged violation of a statute does not confer standing

---

[7]See Official Election Returns, State of Missouri – August 2, 2022 Primary Election, https://www.sos.mo.gov/CMSImages/ElectionResultsStatistics/PrimaryElectionAugust2_2022.pdf at 36 (last visited March 6, 2023).

[8]HAVA, which regulates the conduct of officials involved in the voting process, does not appear to create a private right of action.   The Court has found no case interpreting HAVA as conferring a private right of action under its own statutory provisions, 42 U.S.C. § 1983, or otherwise.   HAVA does have an enforcement mechanism that specifies the U.S. Attorney General may bring suit to enforce certain of its statutory provisions.   See 52 U.S.C. § 21111.

in and of itself, but rather federal courts are to examine whether the plaintiff seeking relief under

a statute has suffered concrete injury.

> Congress' role in identifying and elevating intangible harms does not mean that a
> plaintiff automatically satisfies the injury-in-fact requirement whenever a statute
> grants a person a statutory right and purports to authorize that person to sue to
> vindicate that right. Article III standing requires a concrete injury even in the
> context of a statutory violation.   For that reason, [plaintiff] could not, for example,
> allege a bare procedural violation, divorced from any concrete harm, and satisfy the
> injury-in-fact requirement of Article III.

Spokeo, Inc., 578 U.S. at 341.

The Supreme Court in Spokeo differentiated concrete from particularized injuries.   It

explained that a "concrete" injury must be "de facto," that it is, "it must actually exist."   Id. at

340.   Certain tangible harms readily qualify as concrete injuries, such as physical injury and

monetary damages.   An injury need not be "tangible" to be concrete, however, certain "intangible

injuries can nevertheless be concrete," particularly if the intangible injury has been recognized

historically as providing the basis for recovery, even if the harm may be difficult to prove or

measure.   Id.   As an example, damage to reputation as a result of slander is a concrete, intangible

injury.   Id.   The Supreme Court in Spokeo, however, did not decide whether the plaintiff in that

case had alleged concrete harm under the Fair Credit Reporting Act ("FCRA").   Instead, it

remanded the case back to the Ninth Circuit, instructing the lower court to make a standing

determination.

In a more recent decision, TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), the

Supreme Court expounded on what constitutes a concrete injury for purposes of Article III

standing.   In Ramirez, the plaintiffs also brought claims for violations of the FCRA.   In

addressing whether the plaintiffs had established Article III standing, the Supreme Court reiterated

16

its holding in <u>Spokeo</u> – that Congress cannot confer standing by creating an injury where one did not exist before.   <u>Id.</u> at 2205.   The Supreme Court further explained:

> [A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law. Congress may enact legal prohibitions and obligations. And Congress may create causes of action for plaintiffs to sue defendants who violate those legal prohibitions or obligations. But under Article III, an injury in law is not an injury in fact.

<u>Id.</u> at 2205.   Applying these principles, the Supreme Court found that the plaintiffs who had inaccurate and misleading credit reports disseminated by the defendant to third parties had suffered a concrete injury, because they had "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation."   <u>Id.</u> at 2209.   But as to the plaintiffs whose reports were not shared with third parties, the Supreme Court held these plaintiffs had not alleged a concrete injury, even though the plaintiffs' internal credit files contained misleading and potentially damaging information if the information were to be disclosed.   <u>Id.</u> at 2212.   There was no concrete injury because these plaintiffs had not shown that the defendant had provided, or that there was a sufficient likelihood the defendant would provide, the inaccurate and misleading credit reports to third parties.   <u>Id.</u>

As discussed in more detail above, Plaintiff claims the defendants violated election laws – more specifically, the procedures for accrediting VSTLs and allowing uncertified voting systems to be used in Missouri's elections – but Plaintiff has not adequately alleged a concrete harm flowing from these alleged HAVA violations.   Again, Plaintiff does not allege that the three allegedly unaccredited VSTLs, which tested the voting systems and software used in Missouri, did not perform the tests or that their testing methods did not meet testing standards.   She does not

allege that Missouri's improperly certified voting systems and software inaccurately tabulated votes, or that as a candidate she received votes that were not counted.  In short, there are no allegations in the Amended Complaint of a concrete injury that was the result of the defendants' alleged failure to properly follow election laws.

In her Response to the Federal Defendants' Motion to Dismiss, Plaintiff argues that she has adequately alleged a real injury in fact, because Missouri's electronic voting systems are highly vulnerable to interference and attacks and, by not properly accrediting VSTLs and allowing uncertified voting systems to be used, the defendants failed in their roles to safeguard Missouri's elections.  In support of her argument, Plaintiff attached to her memorandum the declaration of Shawn A. Smith, a retired military officer, who specializes in technology, computers, and cyber threats to security systems.[9]  In his declaration, Mr. Smith asserts that American's voting systems are neither "secure" nor "securable," as they are vulnerable to exploitation by foreign adversaries.

---

[9]The Eighth Circuit has instructed that "[a] court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction."  Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).  "A district court has the authority to dismiss an action for lack of subject matter jurisdiction on any one of three separate bases: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  Johnson v. United States, 534 F.3d 958, 962 (8th Cir. 2008) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).  The Federal Defendants base their jurisdictional challenge on the face of the Complaint.  The Federal Defendants did attach to their Memorandum in Support of their Motion to Dismiss the declaration of Mark A. Robbins, the Interim Executive Director of the EAC.  In his declaration, Mr. Robbins explained the role of the EAC and attached EAC's testing policies, which are public records and were referenced in Plaintiff's Amended Complaint. Plaintiff responded to the Federal Defendants' Motion to Dismiss by referring to facts outside her Amended Complaint.  She attached to her memorandum in opposition a declaration from Shawn A. Smith, a self-described expert in election security.  For purposes of this motion, the Court will consider this affidavit as undisputed.  The Court finds, however, that Mr. Smith's declaration is irrelevant to the standing issue before the Court.

(ECF No. 46, Ex. 1 at 3, 43).   Mr. Smith details a number of security threats facing voting systems and elections in the United States and highlights supply chain attacks.   The fact that there are serious security threats to America's electronic voting systems is neither disputed nor dispositive of whether Plaintiff alleges or has shown that she suffered or will suffer a concrete injury.   HAVA was enacted and the EAC established to address, among other things, security threats to America's voting systems and software.   The issue the Court must decide is whether Plaintiff has alleged or shown a concrete harm to her as a result of the defendants' alleged failure to properly certify the three testing laboratories that tested voting systems used in Missouri elections.   The Court finds the Amended Complaint does not allege a concrete harm to Plaintiff, and Mr. Smith's declaration does not establish one either.

In fact, Mr. Smith's declaration cuts in the other direction and supports a finding that there was no concrete harm to Plaintiff as a result of the Federal Defendants' alleged failure to properly accredit testing laboratories and the State's use of the voting systems the unaccredited laboratories tested in Missouri's elections.   In his declaration, Mr. Smith critiques the EAC's guidelines and the Commission's response to the threat of supply chain attacks facing voting and election systems. Mr. Smith asserts that "the voting systems in U.S. elections have no and have had no supply chain security, nor any testing or verification of that security."   (Id. at 21).   And, according to Mr. Smith, "the EAC has effectively provided no standards, procedures, or safeguards to implement [against supply chain attacks] for election systems and elections."   (Id. at 20).   In other words, EAC's standards and procedures are inadequate and ineffective at combatting threats, particularly supply chain attacks, to America's voting systems.   Based on the reasoning in Mr. Smith's declaration, even if the defendants had followed the EAC's procedures in certifying or accrediting

the three VSTLs, the threat to Missouri's voting systems and software, especially from supply chain security breaches, would remain.

The Court has carefully considered the allegations in the Amended Complaint and the arguments Plaintiff makes in opposition to the Federal Defendants' Motion to Dismiss, including Shawn A. Smith's declaration, and finds Plaintiff has failed to allege or demonstrate a concrete, particularized harm she suffered or will suffer as a result of the defendants' alleged misconduct. As a result, Plaintiff does not have Article III standing, and the Court grants the Federal Defendants' Motion to Dismiss for lack of subject matter jurisdiction.

### B.  Remaining Motions

As previously stated, standing is jurisdictional, and the Court is obligated to determine whether it has subject matter jurisdiction as to all the claims before it.  Hertz Corp., 559 U.S. at 94.  Although Defendant Ashcroft did not move to dismiss Plaintiff's claims against him for want of Article III standing, the Court's findings regarding Plaintiff's failure to allege or demonstrate a particularized and concrete harm apply equally to the claims against Defendant Ashcroft. Therefore, in the absence of a Rule 12(b)(1) motion filed by Defendant Ashcroft, the Court dismisses the claims against this defendant on its own motion for lack of subject matter jurisdiction.  Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987) (district courts are to "be attentive to a satisfaction of jurisdictional requirements" as to all claims).

Finally, a district court "must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments."  Carlson v. Arrowhead Concrete Works, Inc., 445 F.3d 1046, 1050 (8th Cir. 2006).  Because Plaintiff does not have Article III standing, which is a threshold requirement for subject matter jurisdiction, the Court does not have the authority to rule on Plaintiff's Motion

for Preliminary Injunction or Defendant Ashcroft's Rule 12(b)(6) Motion to Dismiss.   <u>Arbaugh</u>, 546 U.S. at 514.   Therefore, the Court denies the remaining motions without prejudice for lack of subject matter jurisdiction.

### III.   Conclusion

Plaintiff has failed to allege or demonstrate the required elements of Article III standing, as she has not shown that she suffered or will suffer a particularized and concrete injury in fact. Because Plaintiff does not have standing to assert claims against the Federal Defendants, the Court grants the Federal Defendants' Motion to Dismiss for lack of subject matter jurisdiction.   Plaintiff also does not have standing to assert claims against Defendant Ashcroft, and the Court dismisses <u>sua</u> <u>sponte</u> the claims against Defendant Ashcroft for lack of subject matter jurisdiction.   As the Court lacks the authority to proceed on the merits of this case for lack of subject matter jurisdiction, the Court denies without prejudice Defendant Ashcroft's Motion to Dismiss and Plaintiff's Motion for Preliminary Injunction and for Partial Summary Judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants United States Election Assistance Commission, Thomas Hicks, Christy McCormick, Benjamin W. Hovland, and Donald L. Palmer's Motion to Dismiss for Lack of Subject Matter Jurisdiction is **GRANTED.**   [ECF No. 31].

**IT IS FURHER ORDERED** that because Plaintiff Alison Graeff fails to allege or demonstrate that she has Article III standing to bring her claims against any of the defendants, the Court **DISMISSES** Plaintiffs' claims against Defendant John J. Ashcroft for lack of subject matter jurisdiction.

**IT IS FURTHER ORDERED** that Plaintiff Alison Graeff's Motions for a Preliminary Injunction and for Partial Summary Judgment and Defendant John J. Ashcroft's Motion to Dismiss for Failure to State a Claim are **DENIED** without prejudice for lack of subject matter jurisdiction. [ECF Nos. 8, 32 & 53].

The Court will issue a separate Order of Dismissal.

*Ronnie L. White*
_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of March, 2023.

22